Hearing Date: August 2, 2018
Hearing Time: 10:00 a.m.
Hearing Place: Syracuse, New York
Objection Deadline: July 26, 2018

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | |
| ) | |
| ) | Chapter 11 |
| Carthage Specialty Paperboard, Inc., *et al.*,[1] ) | Case No. 18-30226 (MCR) |
| ) | |
| ) | Jointly Administered |
| Debtors. ) | |
| ) | |

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER
AUTHORIZING THE ACQUISITION AND SALE OF CERTAIN
REAL PROPERTY IN LOWVILLE, NEW YORK**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby move this Court (this "Motion") for entry of an order, in substantially the form attached hereto as **Exhibit A**, authorizing one of the Debtors, Carthage Specialty Paperboard, Inc. ("CSP"), to facilitate collection of a portion of the debt owed to it by Climax RE Holdings, LLC ("Climax RE") by acquiring from Climax RE certain real property in Lowville, New York and thereafter selling such property to the Lewis County Industrial Development Agency. In support of the Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: Carthage Specialty Paperboard, Inc. (7076) and Carthage Acquisition, LLC (6503).

3169731.1

## JURISDICTION

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and rule-based predicates for the relief requested herein are sections 105 and 363 of title 11 of the United States Code (11 U.S.C. § 101 *et seq.*, as amended, the "Bankruptcy Code") and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 6004-1 and 6004-2 of the Local Bankruptcy Rules for the Northern District of New York (the "Local Rules").

## BACKGROUND

5. On February 28, 2018 (the "Petition Date"), Debtor CSP and Debtor Carthage Acquisition, LLC ("Parent") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of New York (the "Court"), commencing the Debtors' chapter 11 cases (these "Chapter 11 Cases"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Court entered on March 2, 2018.

6. On March 16, 2018, the United States Trustee appointed an official committee of unsecured creditors (the "Committee"). No request for a trustee or examiner has been made in these Chapter 11 Cases.

7. The factual background relating to the Debtors' commencement of these Chapter 11 Cases is set forth in detail in the *Declaration of Donald Schnackel In Support of Chapter 11 Petitions and First Day Motions* filed on the Petition Date and incorporated herein by reference.

## RELIEF REQUESTED

8. By this Motion, the Debtors seek entry of an order authorizing Debtor CSP to enter into two transactions outside the ordinary course of its business in order to facilitate the collection of a promissory note made by Climax RE.

9. The Debtors propose that CSP would acquire from Climax RE certain real property at 7840 State Route 26, Lowville, New York (the "Lowville Property") in partial satisfaction of a $3.5 million promissory note payable by Climax RE to CSP. CSP would then sell the Lowville Property to the Lewis County Industrial Development Authority (the "IDA") or to any party who presents a higher or better offer for the Lowville Property at the hearing on this Motion, free and clear of any liens, claims, encumbrances or other interests ("Interests"), with any existing Interests to attach to the net proceeds of the sale with the same validity and respective priority as existed immediately prior to such sale.

## DISCUSSION

10. The Lowville Property consists of a 170,000 square foot warehouse located on approximately 13 acres of industrial use land just north of the village of Lowville, New York. It is the former home of Climax Manufacturing Company ("Climax"), a Delaware corporation that was, until it went out of business in 2016, engaged in the business of converting paperboard into cartons, boxes and other packaging products. The current owner of the Lowville Property, Climax RE, is a real estate holding company and a wholly-owned subsidiary of Climax.

11. Prior to 2016, Climax was one of CSP's largest customers. In fact, both companies can trace their history back to the former Climax Manufacturing Company, a New York corporation incorporated in 1911. Climax is the successor to the packaging division operations of that company, while CSP took over its paperboard manufacturing operations. Despite their related origins, since at least March 25, 2010, CSP and Climax have existed and operated as separate and distinct corporate entities, each focusing on their respective business lines. However, given their geographic proximity and closely related industries, the companies continued to maintain a robust and symbiotic business relationship, with CSP extending significant trade credit to Climax.

12. Unfortunately, Climax struggled to succeed in a very competitive packaging industry. In mid-2014, it became clear that Climax did not have sufficient cash available to retire its trade account balance with CSP, which at that point had grown in excess of $20 million. As part of a settlement of the debt owed by Climax to CSP, Climax contributed the Lowville Property to Climax RE, its newly-formed subsidiary, and on July 11, 2014, Climax RE executed a promissory note in the original principal amount of $3.5 million (the "Lowville Note") payable to CSP. CSP in turn assigned a collateral interest in the Lowville Note to its senior secured creditor KeyBank, and Climax RE secured its payment obligation under the Note by executing a mortgage of the Lowville Property in favor of KeyBank (the "KeyBank Mortgage"). The KeyBank Mortgage was recorded with the Lewis County Clerk on July 17, 2014. Copies of the Lowville Note, the Credit and Security Agreement pursuant to which CSP pledged its interest in the Lowville Note to KeyBank, and the KeyBank Mortgage are attached to this Motion as **Exhibits B**, **C** and **D** respectively.

13. The Lowville Property has been listed for sale with brokerage firm CBRE for approximately one year. Prior to listing, in August of 2016, CBRE provided an informal suggestion of value for the Lowville Property of between $1,275,000 and $1,700,000, however this estimate was subject to the caveat that an accurate valuation was difficult to provide as there has been very little recent market activity or sales of comparable property in the area, and accordingly that a sale might occur only at a lower value.[2]

14. During the time the Lowville Property has been listed with CBRE, CBRE's sales efforts have included sending out email blasts to the commercial brokerage community in the North Country, advertising the Lowville Property on commercial property websites such as LoopNet.com, CoStar.com, CBRE.com and Crexi.com, mailing fliers directly to industrial users in Lewis, Jefferson, Oswego and St. Lawrence Counties, and making local economic development entities such as the North Country Chamber of Commerce aware of the availability of the property.

15. CBRE's marketing efforts resulted in interest from only one private party buyer who made a verbal offer to pay $400,000 for the Lowville Property but would not commit to a written purchase contract and ultimately decided to invest in a different location.

16. On or about January 19, 2018, the IDA presented an offer to acquire the Lowville Property for a purchase price of $800,000. In addition, the IDA has agreed to allow the Debtors to continue to use up to 80,000 square feet of warehouse space on the Lowville Property for up to two years rent free other than payments for a pro rata share of taxes, utilities and other operating expenses. The IDA's offer to acquire the Lowville Property is contingent upon the

---

[2] As an example of the lack of commercial real estate activity in the area, CBRE noted that the former Metro Paper plant in Carthage, which is a similarly sized 200,000 square foot facility, which was listed at approximately the same time as the Lowville Property and offered at $950,000, has not generated any tours or offers in the past nine months.

property being conveyed free and clear of liens and encumbrances. A copy of the IDA's purchase offer is attached hereto as **Exhibit E**.

17. The Debtors believe that deal offered by the IDA represents the best opportunity to recover on the Lowville Note and that, if a sale to the IDA is not consummated in the near future, the next deal may be years away.

18. The Debtors have filed this Motion to facilitate the delivery of clear title to the IDA and, in connection therewith, to bring the proceeds from the sale of the Lowville Property into the bankruptcy estate of CSP to fund ongoing business operations. Upon receiving approval from the Court, the Debtors propose that CSP would first acquire the Lowville Property from Climax RE, subject to all existing liens and other Interests, in exchange for a reduction of $25,000 of the debt owed by Climax RE under the Lowville Note. CSP would then sell the Lowville Property to the IDA for $800,000 as contemplated in the IDA's purchase offer, free and clear of Interests pursuant to section 363(f) of the Bankruptcy Code, with any existing Interests attaching to the net proceeds of the sale with the same validity and respective priority as existed immediately prior to such sale.

19. KeyBank, as the holder of a $3.5 million first-lien mortgage on the Lowville Property, has consented to the transactions contemplated herein. Moreover, as any proceeds of the sale of the Lowville Property will represent KeyBank's cash collateral, KeyBank has further agreed to allow CSP to use a significant portion of the proceeds from the sale pursuant to this Court's prior order authorizing the use of cash collateral [Docket No. 199]. Access to these additional funds will be critical to the Debtors' continued ability to maintain ongoing operations while they pursue the sale of their business as a going concern.

20.     Other parties who may possibly claim a lien on the Lowville Property include (i) Bank of America as successor to Fleet National Bank ("BoA") who is reflected in the Lewis County Clerk's office as being the assignee of a mortgage in favor of Chemical Bank originally dated December 1, 1988 which, upon information and belief, was given as security to support Climax's obligations under a bond issuance that matured in 2003; (ii) Belting Solutions & Supplies, Inc. ("Belting"), who filed a judgment in the amount of $8,539.84 against Climax on October 5, 2016; (iii) Casella Waste System, Inc. ("Casella") who filed a mechanic's lien asserting $9,121.73 due from Climax relating to the provision of disposal containers on March 2, 2017; (iv) White Birch Paper Canada NSULC ("White Birch"), who filed a default judgment against Climax in the amount of $243,966.95 plus $656.30 in interest and costs on April 24, 2017; and the Pension Benefit Guaranty Corporation ("PBGC"), who filed liens against Climax RE in the amounts of $2,646,466 and $4,036,058 asserting liabilities relating respectively to the Retirement Plan for Employees of Climax Manufacturing Company and the Climax Manufacturing Company Retirement Income Plan for Union Employees on or about January 8, 2018.

21.     The Debtors do not believe that BoA, Belting, Casella or White Birch have valid liens against the Lowville Property.  First, the BoA mortgage appears to have been given as security for a letter of credit supporting Climax's obligations under a 1988 bond issuance which, upon information and belief, matured in 2003 and, to the Debtors' knowledge, there have been no recent collection attempts by BofA or any other party.  Second, the judgment claims of Belting and White Birch represent obligations of Climax, not Climax RE, the owner of the Lowville Property.  Third, the debt claimed by Casella appears to have been for standard industrial waste removal, not related to any improvement of the Lowville Property, and thus does

not qualify as a mechanic's lien against the property. It also appears that Casella failed to file its notice of lien within the statutorily prescribed time necessary to obtain a mechanic's lien.

22. Moreover, with the exception of the BoA mortgage, which as noted above, upon information and belief no longer supports any debt or security obligation, all of the purported liens were filed subsequent to, and are junior in priority to the KeyBank Mortgage. In light of the fact that the $3.5 million KeyBank Mortgage is substantially in excess of the value of the Lowville Property, the Debtors have requested that PBGC voluntarily release its liens in order to allow Climax RE to sell the Lowville Property directly to the IDA. As of the date of this Motion, the PBGC has not agreed to voluntarily release its liens. Consequently, the Debtors have developed the alternative transaction structure outlined in this Motion to facilitate the sale of the Lowville Property and collection on the Lowville Note.

23. As discussed below, to the extent any of the foregoing potential liens represent valid liens against Climax RE and the Lowville Property, one or more of the conditions set forth in section 363(f)(1)-(5) are satisfied such that CSP can sell the Lowville Property free and clear of such Interests.

## AUTHORITY FOR REQUESTED RELIEF

**A. The sale of the Assets is within the sound
business judgment of the Debtor and should be approved**

24. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan. However, courts in the Second Circuit and elsewhere have held that approval of a proposed sale of property

pursuant to section 363(b) of the Bankruptcy Code is appropriate where the proposed transaction represents a reasonable exercise of the debtor's business judgment. See *e.g., In re Chateaugay Corp.,* 973 F.2d 141 (2d Cir. 1992); *Comm. of Equity Sec. Holders v. Lionel Corp (In re Lionel Corp.)*, 772 F.2d 1063, 1071 (2d Cir. 1983).

25. Courts generally show great deference to a debtor in possession's decisions when applying the business judgment standard. *See In re Global Crossing, Ltd.,* 295 B.R. 726, 744 n.58 (Bankr. S.D.N.Y. 2003) ("[T]he Court does not believe that it is appropriate for a bankruptcy court to substitute its own business judgment for that of the [d]ebtors and their advisors, so long as they have satisfied the requirements articulated in the caselaw."). Deference is inappropriate only if such business judgment is "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice." *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.),* 756 F.2d 1043, 1047 (4th Cir. 1985).

26. A sound business purpose for a transaction outside the ordinary course of business may be found where such a transaction is necessary to preserve the value of assets for the estate, its creditors or interest holders. See *e.g., In re Lionel Corp.*, 722 F.2d at 1071. In addition to selling assets, courts have also authorized debtors to expend estate resources and acquire property outside of the ordinary course of their business where the acquisition of such property will serve to assist in the debtor's reorganization. *See*, *e.g.*, *In re Podzemny*, 2011 Bankr. LEXIS 567, *17-26 [Case No. 09-14226] (Bankr. D. N.M. Feb. 8, 2011) (authorizing debtor to expend $800,000 to develop 750 acres of additional farmland where doing so would increase the debtor's farmed acreage by approximately 12% and would result in projected annual net income of $476,250); *In re Bosque Power Company, LLC* [Case No. 10-60348] (Bankr. W.D. Tex. June

7, 2010) (authorizing debtor power plant to expend funds to acquire a replacement for a major piece of equipment necessary to sell power to the electrical grid).

27. A debtor's showing of a sound business purpose need not be unduly exhaustive but, rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case. *Lionel*, 722 F.2d at 1071.

28. In this case, the Debtors submit that CSP's decision to acquire the Lowville Property from Climax RE and subsequently convey it to the IDA is based upon sound business judgment and should be approved. Although the Debtors have access to debtor in possession financing, they require additional funds to support their operations through the date of a potential sale of all or substantially all of their assets as a going concern. The $3.5 million owed by Climax RE pursuant to the Lowville Note represents a critical source of potential funding for CSP; however, as Climax RE has no assets other than the Lowville Property, there is no way to collect that debt unless the Lowville Property is sold. Further, the IDA, which has provided the highest offer for the Lowville Property, requires that title be delivered free and clear of any liens. Absent the consent of all lienholders, including especially the PBGC, to release their liens, the transactions contemplated by this Motion represent the most expedient path to convey clear title to the IDA, thereby facilitating a recovery on the Lowville Note. Accordingly, entering into these transactions is an appropriate exercise of CSP's business judgment.

## B. The proposed sale satisfies the requirements of section 363(f) of the Bankruptcy Code

29. Under section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell all or any part of its property free and clear of any and all liens, claims, or interests in such property if:

> (1) such a sale is permitted under applicable non-bankruptcy law;
> (2) the party asserting such a lien, claim, or interest consents to such sale;
> (3) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property;
> (4) the interest is the subject of a *bona fide* dispute; or
> (5) the party asserting the lien, claim, or, interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.

11 U.S.C. § 363(f); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that section 363(f) of the Bankruptcy Code is written in the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the subsections is met). Furthermore, courts have held that they have the equitable power to authorize sales free and clear of interests that are not specifically covered by section 363(f). *See, e.g., In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *3, 6 (Bankr. D. Del. Mar. 27, 2001); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).

30. As an initial matter, KeyBank, holds a first-lien mortgage on the Lowville Property and has consented to the sale as outlined herein. As noted above, prior to filing this Motion the Debtors reached out to the PBGC to request that the PBGC voluntarily release its liens to enable the sale of the Lowville Property. The Debtors are hopeful that the PBGC and to the extent they are determined to have valid liens, any other lienholders, will recognize that their

liens are subordinate to KeyBank and out of the money, and will consent to the sale satisfying section 363(f)(2).

31.     In the event the consent of all lienholders cannot be obtained, the Court may nevertheless grant this Motion pursuant to one or more of the remaining subsections of 363(f).

32.     First, the Lowville Property may be sold free and clear of the BoA mortgage pursuant to section 363(f)(4) because any debt owed pursuant to such mortgage is in *bona fide* dispute. That obligation, upon information and belief was incurred by Climax to backstop a letter of credit in support of bonds which have long been satisfied, and there have been no attempts by BoA or any other purported mortgagee to assert a debt or to enforce the mortgage. Similarly, as set forth above, the Debtors' analysis of the filings by each of Belting, Casella and White Birch suggest that none of them hold valid liens against the Lowville Property, and the Court may therefore authorize the sale free and clear of any Interests they may have pursuant to section 363(f)(4).

33.     Second, because the value of the Lowville Property is significantly less than KeyBank's $3.5 million first lien, the value of the subordinate liens of the PBGC, Belting, Casella and White Birch are all effectively zero. Because the Lowville Property will be sold for a price in excess of the value of those subordinate liens, the Court may authorize its sale free and clear of such Interests pursuant to section 363(f)(3).[3] *See In re Oneida Lake Dev., Inc.*, 114 B.R. 352, 356-57 (Bankr. N.D.N.Y. 1990) (for purposes of section 363(f)(3), liens should be valued by reference to section 506(a) of the Bankruptcy Code which defines secured status as extending only to "the value of such creditor's interest in the estate's interest in such property."); *In re*

---

[3] To the extent any creditors of CSP have liens that would attach to the Lowville Property once title is transferred to CSP from Climax RE notwithstanding the provisions of section 552 of the Bankruptcy Code, such liens would also be subordinate to KeyBank's prior perfected mortgage and would therefore also have a value of zero for purposes of the section 363(f)(3) analysis.

*Boston Generating, LLC*, 440 B.R. 302, 332 (Bankr. S.D.N.Y. 2010) ("the price must be equal or greater than the aggregate *value* of the liens asserted against it, not their *amount* . . . [t]he 'value' of a lien is . . . the amount by which the lienholder's claim is actually secured.") (internal citations omitted, emphasis in original); *In re Beker Indus. Corp.*, 63 B.R. 474 (Bankr. S.D.N.Y. 1986) (same).[4]

34.  Third, the PBGC, Belting, Casella and White Birch could all be compelled to accept an unsecured deficiency claim in a cramdown under section 1129(b)(2) or in a foreclosure proceeding under applicable New York to the extent the value of the Lowville Property is not sufficient to pay their claims in full. *See* 11 U.S.C. § 1129(b); N.Y. REAL PROP. ACT. LAW, Art. 13. Therefore, the Court may authorize the sale of the Lowville Property free and clear of such Interests pursuant to section 363(f)(5). *In re Boston Generating*, 440 B.R. 302 at 333; *In re Jolan, Inc.*, 403 B.R. 866, 869-70 (Bankr. W.D. Wash. 2009).

### C. The Court has the equitable power to approve the acquisition and sale of the Lowville Property

35.  Section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the

---

[4] A small minority of courts have taken the position that section 363(f)(3) permits a sale free and clear of liens only if the sale price is in excess of the aggregate amount of claims secured by such liens, even if such claims exceed the value of the property being sold. *See*, *e.g.*, *In re Flour City Bagels, LLC*, 557 B.R. 53, 87 (Bankr. W.D.N.Y. 2016); *but see In re WK Lang Holdings, LLC*, 2013 Bankr. Lexis 5224 (Bankr. D. Kan. December 1, 2013) ("No court of appeal has adopted this view and the great weight of lower court authority is to the contrary."). The majority approach is the better one. Requiring sale proceeds to exceed the face amount of all claims, irrespective of whether such claims are fully secured, would render section 363(f)(3) meaningless because property may always be sold free and clear of liens when the claims secured by those liens are satisfied in full. Moreover, to the extent an undersecured lienholder opposes a sale and wishes to preserve its interest in property proposed to be sold, section 363(k) affords that lienholder the right to credit bid its debt up to the full face amount, subject to the satisfaction of all senior liens, thereby ensuring that the lienholder retains the full economic benefit of the lien.

Bankruptcy Code, the exercise of its section 105(a) power is proper. *In re Fesco Plastics Corp.* 996 F.2d 152, 154 (7th Cir. 1993); *Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002). Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. *See*, *e.g.*, *Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

36. The acquisition and sale of the Lowville Property as set forth herein represents the most expedient method for CSP to collect the debt owed to it by Climax RE and will provide access to cash the Debtors need to maintain operations while they continue to market their business and seek to sell their assets as a going concern. Moreover, in light of the marketing process that has already been undertaken with respect to the Lowville Property, the Debtors believe that the offer from the IDA represents the highest and best price for the Lowville Property. Accordingly, the relief sought by this Motion not only is reasonable, but necessary, to maximize the value of the Debtors' estates for the benefit of the Debtor's creditors and other stakeholders.

**D. Relief from the fourteen-day waiting periods under Bankruptcy Rules 6004(h) is appropriate**

37. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Debtors request that the order authorizing the Lowville Sale be

effective immediately by providing that the fourteen (14) day stay under Bankruptcy Rule 6004(h) is waived.

38. The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the stay period, Collier on Bankruptcy suggests that the stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 COLLIER ON BANKRUPTCY ¶6064.09 (L. King, 15th rev. ed. 1988). Furthermore, Collier's provides that if an objection is filed and overruled, and the objecting party informs the court of their intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *Id.*

39. Accordingly, the Debtors hereby request that the Court waive the stay period under Bankruptcy Rule 6004(h). Moreover, in the event any party does appeal the order, the Debtors respectfully submit that the order should not be stayed pending such appeal unless the appellant posts a bond in favor of the Debtor in an amount no less than the total consideration to be received under the IDA's purchase offer.

## NOTICE

40. Notice of this Motion has been given to: (a) the Office of the United States Trustee for the Northern District of New York; (b) counsel to the Official Committee of Unsecured Creditors; (c) counsel for the Debtor's prepetition secured lenders; (d) counsel for the IDA; (e) all parties known to assert an Interest or potential Interest in the Lowville Property; (f) all parties filing Notices of Appearance and requests for papers in these Chapter 11 Cases; (g)

all known creditors of the Debtors and (h) each of the parties who approached CBRE and expressed an interest in acquiring the Lowville Property who were deemed by CBRE to be potentially qualified buyers. In light of the relief requested herein, the Debtors respectfully submit that no further notice is necessary or required.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an Order pursuant to sections 105 and 363 of the Bankruptcy Code, substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to acquire the Lowville Property and sell it to the IDA as set forth herein, or to any party presenting a higher or better offer for the Lowville Property at the hearing on this Motion, and granting such other and further relief as the Court deems just and proper.

Dated: July 11, 2018
    Syracuse, New York

BOND, SCHOENECK & KING, PLLC

By:    /s/ Stephen A. Donato
Stephen A. Donato, Bar Roll No. 101522
Grayson T. Walter, Bar Roll No. 518237
Sarah M. Harvey, Bar Roll No. 519993
Office and Post Office Address:
One Lincoln Center
Syracuse, New York 13202
Tel: (315) 218-8000
Fax: (315) 218-8100
Email: sdonato@bsk.com, gwalter@bsk.com
    and sharvey@bsk.com

*Counsel to the Debtors and
Debtors in Possession*