So Ordered.

Signed this 24 day of September, 2018.

_____

Margaret Cangilos-Ruiz

United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Chapter 11 |
| Carthage Specialty Paperboard, Inc., *et al.*,[1] | ) | Case No. 18-30226 (MCR) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |
| | ) | |

**ORDER: (I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH**
**THE PROPOSED SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS;**
**(II) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE SALE;**
**(III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND**
**(IV) APPROVING STALKING HORSE ASSET PURCHASE AGREEMENT,**
**PROPOSED BREAK-UP FEE AND BUYER ADVANCES**
**AND CARVEOUT OF LIENS THEREON**

Upon consideration of the motion (the "Motion")[2] [Docket No. 254] of the above-

captioned debtors and debtors in possession (the "Debtors"), pursuant to sections 105(a), 363,

365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the

"Bankruptcy Code"), as supplemented by Rules 2002, 6004, 6006, 9007 and 9014 of the Federal

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: Carthage Specialty Paperboard, Inc. (7076) and Carthage Acquisition, LLC (6503).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed thereto in the Motion.

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order (this "Bidding Procedures Order"): (i) approving bidding procedures in connection with the sale of substantially all of the Debtors' assets; (ii) scheduling an auction and a hearing to consider the sale; (iii) approving the form and manner of notice thereof; (iv) approving the terms of the Stalking Horse APA and the proposed Break-Up Fee and Buyer Advances; and (v) granting related relief; the Court having determined that the relief provided herein is in the best interests of the Debtors, their estates, creditors and other parties in interest; and due and adequate notice of the Motion having been given under the circumstances; and upon the record of the hearing on the Motion, and the full record of these cases; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby:

### FOUND AND DETERMINED THAT:[3]

A.    This Court has jurisdiction over the Motion and the transactions contemplated therein pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the Auction and Sale Hearing.  A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties-in-interest.

C.    The Debtors' proposed notice of the Bidding Procedures is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the

---

[3]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when applicable.  *See* Bankruptcy Rule 7052.

3218329.3

Auction (as defined in the Bidding Procedures), the sale of the Assets, and the Bidding

Procedures to be employed in connection therewith.

D.      The Debtors have articulated good and sufficient business reasons for this

Court to approve the Bidding Procedures, including:  (i) the scheduling of a bid deadline, auction

and sale hearing for the sale of the Assets; and (ii) the establishment of procedures to fix the

Cure Amounts to be paid under section 365 of the Bankruptcy Code in connection with the

assumption, assignment and/or transfer of the Executory Contracts and Unexpired Leases.

E.      The Bidding Procedures are reasonably designed to maximize the value to

be achieved for the Assets.

F.      The entry of this Bidding Procedures Order is in the best interests of the

Debtors, their estates, creditors, and other parties-in-interest.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED
THAT:**

1.      The Motion is granted as set forth herein.

2.      All objections to the Motion or the relief provided herein that have not

been withdrawn, waived or settled, hereby are overruled and denied on the merits.

3.      The Bidding Procedures, in substantially the form attached hereto as

**Schedule 1**, are hereby incorporated herein and approved, and shall apply with respect to the sale

of the Assets.  The Debtors are authorized to take all actions necessary or appropriate to

implement the Bidding Procedures.

4.      The Break-Up Fee set forth in the Motion, and the carveout and

subordination of all liens to the payment thereof if payable in accordance with the Bidding

Procedures, is hereby approved in the amount of $270,000.  No separate expense reimbursement

shall be earned or payable to the Stalking Horse Purchaser.  The Buyer Advances are hereby

3

approved, subject to the consent in each instance of the Debtors and KeyBank.  In the event the

Stalking Horse Purchaser makes any Buyer Advances and is not the Successful Bidder at the

Auction, the Break-Up Fee payable to the Stalking Horse Purchaser will be increased by the

value of all Buyer Advances made by the Stalking Horse Purchaser prior to the Auction.  If no

other bids are received for the Assets that are higher or otherwise better than the transaction set

forth in the Stalking Horse APA, no Break-Up Fee will be payable.

5.      As further described in the Bidding Procedures, the deadline for

submitting bids for the Assets (the "Bid Deadline") is October 12, 2018 at 12:00 noon

(prevailing Eastern time).  No bid shall be deemed to be a Qualified Bid (as defined in the

Bidding Procedures) or otherwise considered for any purposes unless such bid meets the

requirements set forth in the Bidding Procedures.

6.      The Debtors may sell the Assets by conducting an Auction in accordance

with the Bidding Procedures.  If any Qualified Bids (other than the Stalking Horse APA) are

received by the Debtors in accordance with the Bidding Procedures, the Auction shall take place

at 10:00 a.m. (prevailing Eastern time) on October 18, 2018 at the offices of Bond, Schoeneck &

King, PLLC, One Lincoln Center, Syracuse, New York, or at such other place and time as the

Debtors shall notify all Qualified Bidders who have submitted Qualified Bids.  If, however, no

such Qualified Bids are received by the Bid Deadline, then the Auction will not be held, the

Stalking Horse APA shall be the Successful Bid and the Stalking Horse Purchaser shall be the

Successful Bidder.

7.      Only Qualified Bidders who have submitted a Qualified Bid and their

authorized representatives will be eligible to attend and participate at the Auction.

Notwithstanding the foregoing, an authorized representative and counsel for each of KeyBank,

4

the Committee, Pine Street Capital Partners II, LP, Patriot Capital III SBIC, L.P., the

Development Authority of the North Country, and the United Steel, Paper and Forestry, Rubber,

Manufacturing, Energy, Allied-Industrial and Service Workers International Union may attend

the Auction.  Each Qualified Bidder participating at the Auction will be required to confirm that

it has not engaged in any collusion with respect to the bidding or the sale.

       8.     The Sale Hearing shall be held before this Court on October 19, 2018 at

10:00 a.m. (prevailing Eastern time), or as soon thereafter as counsel and interested parties may

be heard.

       9.     On or before **September 27, 2018, by 5:00 p.m.**, Debtors will cause (i) a

notice in substantially the form attached hereto as **Schedule 2** (the "Notice of Auction and Sale

Hearing"); and (ii) a copy of the Bidding Procedures Order to be sent by first-class mail postage

prepaid, to the following:  (i) counsel to the Debtors, Bond, Schoeneck & King, PLLC, One

Lincoln Center, Syracuse, New York 13202, Attn: Stephen A. Donato, Esq. and Grayson T.

Walter, Esq.; (ii) counsel to KeyBank, Lemery Greisler, LLC, 50 Beaver Street, 2nd Floor,

Albany, New York 12207, Attn: Paul Levine, Esq. and Meghan Breen, Esq.; (iii) counsel to the

Official Committee of Unsecured Creditors, Lowenstein Sandler LLP, One Lowenstein Drive,

Roseland, New Jersey 07068, Attn: Terri Freedman, Esq. and Jeffrey Prol, Esq.; and (iv) the

Office of the United States Trustee for the Northern District of New York, U.S. Courthouse and

Federal Building, 10 Broad Street, Suite 105, Utica, New York 13501, Attn: Guy Van Baalen,

Esq.; (v) counsel to the Stalking Horse Purchaser, Phillips Lytle LLP, 125 Main Street, Buffalo,

New York, 14203 Attn: William Brown, Esq. and Sharon Azurin, Esq.; (vi) all taxing authorities

and other governmental agencies having jurisdiction over the Assets, including the United States

Department of Treasury's Internal Revenue Service and the New York Department of Taxation

5

and Finance; (vii) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002; (viii) all persons known or reasonably believed to have asserted any lien, claim, encumbrance, right of first refusal, or other  Interest in or upon any of the Assets; (ix) the non-debtor parties to the Executory Contracts and Unexpired Leases and any parties who are known to claim interests therein; (x) all persons known or reasonably believed to have expressed an interest in acquiring some or all of the Assets within the last six months; (xi) the Attorney General of the State of New York; (xii) the United States Environmental Protection Agency; (xiii) the New York State Department of Environmental Conservation; (xiv) the Federal Energy Regulatory Commission; (xv) PIUMPF Pension Fund, 3320 Perimeter Hill Drive, Nashville, Tennessee, 37211 Attn: Trustees; (xvi) PIUMPF Pension Fund, 1101 Kermit Drive, Suite 800, Nashville, Tennessee 37217; (xvii) all of the Debtors former employees receiving early retirement benefits; (xviii) the New York State Workers Compensation Board; and (xix) all employees of the Debtors.

10.     On or before **September 27, 2018, by 5:00 p.m.**, Debtors will:  (a) serve the Notice of Auction and Sale Hearing on all known creditors of the Debtors and all other parties in interest entitled to receive notice pursuant to Bankruptcy Rule 2002(a)(2); and (b) subject to applicable submission deadlines and to the extent practicable within the time periods set forth herein, publish the Notice of Auction and Sale Hearing once in one or more publications the Debtors deem appropriate.

11.     On or before **September 27, 2018, by 5:00 p.m.**, Debtors shall serve by first class mail or hand delivery, a notice of potential assumption, assignment and/or transfer of the Executory Contracts and Unexpired Leases (substantially in the form attached hereto as **Schedule 3** the "Notice of Assumption and Assignment") on all non-debtor parties to the

6

Executory Contracts and Unexpired Leases.  The Notice of Assumption and Assignment shall identify the calculation of the cure amounts that the Debtors believe must be paid to cure all prepetition defaults under the Executory Contracts and Unexpired Leases (the "Cure Amounts"). In addition, if the Debtors identify additional executory contracts or unexpired leases that might be assumed by the Debtors and assigned to the Successful Bidder which are not set forth in the original Notice of Assumption and Assignment, the Debtors shall promptly send a supplemental notice (a "Supplemental Notice of Assumption and Assignment") to the applicable counterparties to such additional executory contracts and unexpired leases.

12.    Unless a non-debtor party to an Executory Contract or Unexpired Lease files an objection (the "Cure Amount/Assignment Objection") to (a) their scheduled Cure Amount and/or (b) to the proposed assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease by the later of (i) **4:00 p.m.** (prevailing Eastern time) on **October 8, 2018**, or (ii) solely with respect to any Executory Contract or Unexpired Lease which is the subject of a Supplemental Notice of Assumption and Assignment, ten (10) days after service of the relevant Supplemental Notice of Assumption and Assignment (such later date, the "Cure/Assignment Objection Deadline") and serves a copy of the Cure Amount/Assignment Objection so as to be received no later than the Cure/Assignment Objection Deadline by: counsel to the Debtors, Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York 13202, Attn: Stephen A. Donato, Esq. and Grayson T. Walter, Esq. and counsel to the Stalking Horse Purchaser, Phillips Lytle LLP, One Canalside, 125 Main Street, Buffalo, New York, Attn: William Brown, Esq., then such non-debtor party (i) will be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Executory Contract and Unexpired Lease and the Debtors shall be entitled to rely

7

solely upon the Cure Amount, and (ii) if the Executory Contract or Unexpired Lease is identified as an Asset to be acquired by the Successful Bidder and/or Back-Up Bidder, the non-debtor party shall be deemed to have consented to the assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease and shall be forever barred and estopped from asserting or claiming against the Debtors, the Successful Bidder and/or Back-Up Bidder or any other assignee of the relevant Executory Contract or Unexpired Lease that any additional amounts are due or defaults exist, or that conditions to assumption, assignment and/or transfer must be satisfied, under such Executory Contract or Unexpired Lease.  Notwithstanding the foregoing, as provided below, each non-debtor party shall retain the right to object to the assumption, assignment or transfer of its Executory Contract or Unexpired Lease, based solely on the issue of whether the Successful Bidder and/or Back-Up Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code, provided, however, that any objection to the Stalking Horse Purchaser's ability to provide adequate assurance of future performance must be made on or prior to the Cure/Assignment Objection Deadline.

13.     If an objection challenges a Cure Amount, the objection must set forth the cure amount being claimed by the objecting party (the "Claimed Cure Amount") with appropriate documentation in support thereof.  Upon receipt of a Cure Amount/Assignment Objection, the Debtors shall be authorized, but not directed, to resolve any Cure Amount/Assignment Objection by mutual agreement with the objecting counterparty to any Executory Contract or Unexpired Lease and the Stalking Horse Purchaser or any other Successful Bidder without further order of the Court.  In the event that the Debtors and any objecting party are unable to consensually resolve any Cure Amount/Assignment Objection prior

3218329.3

to the Sale Hearing, the Court will resolve any such Cure Amount/Assignment Objection at the Sale Hearing.

14.     The Debtors, the Successful Bidder or the Back-Up Bidder, as the case may be, are authorized, subject to the terms of the Successful Bid or the Back-Up Bid, to exclude any Executory Contract or Unexpired Lease from the list of Assets to be sold (i) no later than the closing of the sale of the Assets, or, (ii) if the Court determines at any hearing on a Cure Amount/Assignment Objection that the applicable cure amount for such contract is greater than the Cure Amount proposed by the Debtors, no later than five (5) business days following the date of such determination.  The non-debtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice mailed within two (2) business days of such determination.

15.     Upon the conclusion of the Auction for the Assets, the Debtors will file and serve a notice identifying the Successful Bidder and Back-Up Bidder to the non-debtor parties to the Executory Contracts and Unexpired Leases that have been identified in such Successful Bid and Back-Up Bid.  The non-debtor parties to the Executory Contracts and Unexpired Leases may raise at the Sale Hearing an objection to the assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease solely on the issue of whether any Successful Bidder or Back-Up Bidder who is not the Stalking Horse Purchaser can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code (the "Adequate Assurance Objection Deadline").

16.     The terms of the Stalking Horse APA as modified by that certain Amendment 1 attached hereto as **Schedule 4** are approved, subject to the receipt of higher or better bids at the Auction and the entry of the Sale Order.

3218329.3

17.    Objections to the sale of the Assets, or the balance of the relief requested in the Motion but not granted in this Bidding Procedures Order must:  (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the United States Bankruptcy Court for the Northern District of New York, on or before **4:00 p.m.** (prevailing Eastern time) on **October 12, 2018**, or such later date and time as the Debtors may agree; and (d) be served so as to be received no later than 4:00 p.m. (prevailing Eastern time) on the same day, upon counsel to the Debtors, Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York 13202, Attn: Stephen A. Donato, Esq. and Grayson T. Walter, Esq. and counsel to the Stalking Horse Purchaser, Phillips Lytle LLP, One Canalside, 125 Main Street, Buffalo, New York, Attn: William Brown, Esq. All objections must state with specificity the nature of such objection and will be heard by the Court at the Sale Hearing.

18.    The Notice of Auction and Sale Hearing and the Notice of Assumption, and Assignment to be issued in connection with the proposed sale of the Assets, substantially in the forms annexed hereto as **Schedule 2** and **Schedule 3**, respectively, are approved.  The proposed manner of service of the Notice of Auction and Sale Hearing and the Notice of Assumption and Assignment are approved.

19.    The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties in interest other than by announcement of said adjournment before this Court or on this Court's calendar on the date scheduled for said hearing.

20.    Except as otherwise provided in the Stalking Horse APA or this Bidding Procedures Order, the Debtors further reserve the right as they may reasonably determine to be in the best interests of their estates, subject to conformity with the Bidding Procedures, to: (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids;

3218329.3

(c) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (d) reject any bid that the Debtors deem to be (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (e) remove some of the Assets from the Auction; (f) waive terms and conditions set forth in the Bidding Procedures with respect to all Bidders; (g) impose additional terms and conditions with respect to all Bidders; (h) extend the deadlines set forth herein; (i) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; and (j) modify the Bidding Procedures as the Debtors may determine to be in the best interests of their estates, or to withdraw the Motion and abandon the sale process at any time with or without prejudice.

21.     The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and this Bidding Procedures Order shall be effective immediately upon its entry.

22.     This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order.

# # #

3218329.3

# **SCHEDULE 1**

## **To Bidding Procedures Order**

[Bidding Procedures]

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Chapter 11 |
| Carthage Specialty Paperboard, Inc., *et al.*,[1] | ) | Case No. 18-30226 (MCR) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |
| | ) | |

## BIDDING PROCEDURES

By motion dated September 6, 2018 (the "Motion"),[2] the above-captioned debtors and debtors in possession (the "Debtors") sought approval of, among other things, the procedures by which the Debtors will determine the highest or otherwise best offer for the sale of substantially all of the Debtors' assets (the "Assets").

On **[September 20]**, 2018, the United States Bankruptcy Court for the Northern District of New York (the "Court") entered an order (the "Bidding Procedures Order"), which, among other things, authorized the Debtors to determine the highest or otherwise best offer for the Assets through the process and procedures set forth below (the "Bidding Procedures"). The Debtors reserve the right to modify the Bidding Procedures, provided that any such modification is not inconsistent with the terms of the Motion or the Bidding Procedures Order.

The sale of the Assets will be subject to competitive bidding as set forth herein and approval of the Court pursuant to sections 105, 363 and 365 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

**Assets to be Sold**

The Assets to be sold constitute substantially all of the assets of the Debtor other than the Excluded Assets (as defined in the Stalking Horse APA).

**Participation Requirements**

In order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in the Assets (a "Bidder") must first deliver the following materials to the Debtors and their counsel:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: Carthage Specialty Paperboard, Inc. (7076) and Carthage Acquisition, LLC (6503).

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

    i.      an executed confidentiality agreement in form and substance satisfactory to the Debtors and their counsel; and

    ii.     the most current audited and latest unaudited financial statements (collectively, the "Financials") of the Bidder, or, if the Bidder is an entity formed for the purpose of a sale transaction, (x) Financials of the equity holder(s) of the Bidder and (y) a written commitment acceptable to the Debtors of the equity holder(s) of the Bidder to be responsible for the Bidder's obligations in connection with a sale transaction (including being bound by the terms and conditions of the Bidding Procedures); which demonstrate to the Debtors' satisfaction the Bidder's financial ability to consummate a competing sale transaction provided that if a Bidder is unable to provide Financials, the Debtors may in their discretion, but shall have no obligation to, accept such other information as they deem sufficient to establish a Bidder's financial wherewithal.

A Bidder meeting the requirements set forth in this paragraph shall be considered a "Qualified Bidder." Notwithstanding the foregoing, each of KeyBank and the Stalking Horse Purchaser shall be a Qualified Bidder, but KeyBank shall refrain from credit bidding so long as the Stalking Horse Purchaser's offer (as set forth in the Stalking Horse APA or as it may be subsequently modified in a manner not disadvantageous to KeyBank) remains open and represents, in KeyBank's reasonable judgment, the highest or best bid received for the Assets. The Debtors will promptly advise each Bidder in writing of the Debtors' determination whether or not the Bidder is a Qualified Bidder.

## Bid Requirements

The Debtors shall determine whether a bid qualifies as a "Qualified Bid." To constitute a Qualified Bid, a bid (other than the Stalking Horse APA, which shall constitute a Qualified Bid) must be a written irrevocable offer from a Qualified Bidder and:

    i.      state that the Bidder offers to consummate the purchase of the Assets pursuant to an agreement containing terms that are substantially similar to those in the Stalking Horse APA (or pursuant to alternative terms that the Debtors determine are superior to the terms and conditions of the Stalking Horse APA) and which has been marked to show any changes, amendments or modifications to the Stalking Horse APA that are being proposed by the Bidder, as applicable (the "Marked Purchase Agreement");

    ii.     provide that the cash consideration to be given for the Assets will exceed the Purchase Price (as defined in the Stalking Horse APA), by at least $320,000 (the "Initial Minimum Overbid") which amount is the sum of the $270,000 Break-Up Fee and the minimum bid increment of $50,000; notwithstanding the foregoing, a Bidder who submits a bid which includes a cash component and which is approved by KeyBank, in consultation

2

with the Debtors, shall not need to necessarily exceed the Initial Minimum Overbid, subject to eventual approval of the Bankruptcy Court if the Stalking Horse Purchaser is not the Successful Bidder;

iii.  provide for total consideration to be given for the Assets which is higher or otherwise better than the Total Consideration (as defined in the APA) as determined by the Debtors in consultation with KeyBank and the Committee;

iv.  contain a list of the Debtors' executory contracts and unexpired leases with respect to which the Bidder seeks assignment from the Debtors, provided, however, IF ANY BID IS CONDITIONED ON THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES, THE BIDDER SHALL BE REQUIRED TO PROVIDE EVIDENCE OF ITS ABILITY TO PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE OF SUCH CONTRACTS OR LEASES ALONG WITH ITS BID;

v.  confirm that the offer shall remain open and irrevocable as provided below;

vi.  enclose a clean copy of the proposed Marked Purchase Agreement, executed by the Bidder;

vii.  be submitted no later than the Bid Deadline (defined below) and accompanied by a certified or bank check or wire transfer in an amount equal to eight and one-half percent (8.5%) of the proposed purchase price set forth in the bid as a minimum good faith deposit (the "Deposit"), which Deposit shall be used to fund a portion of the purchase price provided for in the bid;

viii.  be on terms that are not materially more burdensome or conditional than the terms of the Stalking Horse APA;

ix.  not be conditioned on obtaining financing or the outcome of any due diligence by the Bidder;

x.  not request or entitle the Bidder to any break-up fee, expense reimbursement or similar type of payment; and

xi.  fully disclose the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation.

3

**Bid Deadline**

The deadline for submitting bids on the Assets shall be **October 12, 2018 at 12:00 noon (prevailing Eastern time)** (the "Bid Deadline").

A Bidder that desires to make a bid for the Assets must deliver written and electronic copies of their bid so that they are actually received prior to the Bid Deadline by:  (a) counsel to the Debtors, Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York 13202, Attn: Stephen A. Donato, Esq. and Grayson T. Walter, Esq.; (b) counsel to KeyBank, Lemery Greisler, LLC, 50 Beaver Street, 2nd Floor, Albany, New York 12207, Attn: Paul Levine, Esq. and Meghan Breen, Esq.; (c) counsel to the Official Committee of Unsecured Creditors, Lowenstein Sandler LLP, One Lowenstein Drive, Roseland, New Jersey 07068, Attn: Terri Freedman, Esq. and Jeffrey Prol, Esq.; (d) the Office of the United States Trustee for the Northern District of New York, U.S. Courthouse and Federal Building, 10 Broad Street, Suite 105, Utica, New York 13501, Attn: Guy Van Baalen, Esq.; and (e) counsel for the Stalking Horse Purchaser, Phillips Lytle LLP, One Canalside, 125 Main Street, Buffalo, New York 14203, Attn:  William J. Brown, Esq.

As promptly as practicable after a Bidder delivers a bid, the Debtors shall determine, and shall notify the Bidder, whether the Bidder is a Qualified Bidder and whether its bid is a Qualified Bid.  The Debtors, in consultation with KeyBank, may modify, employ and announce at the Auction additional or amended procedural rules that are reasonable under the circumstances for conducting the Auction, provided that such rules (i) are not materially inconsistent with the Bidding Procedures, the Bidding Procedures Order, the Bankruptcy Code or any order of the Bankruptcy Court entered in connection herewith, (ii) do not purport to abrogate or modify the Stalking Horse APA or the Break-Up Fee, and (iii) are disclosed to each Qualified Bidder attending the Auction.

**Obtaining Due Diligence Access**

The Debtors shall afford each Qualified Bidder reasonable due diligence information.  Site access shall be provided upon reasonable request to the Debtors and at the discretion of the Debtors within their reasonable business judgment.  The due diligence period will end on the Bid Deadline.

The Debtors shall not be obligated to furnish any information relating to the Debtors, the Assets, and/or the sale to any person except to a Qualified Bidder.  The Debtors shall give each Qualified Bidder reasonable access to an online data room containing the written due diligence materials provided to the Stalking Horse Purchaser.

The Debtors shall coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders.  No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

3218329.3

**Due Diligence From Bidders**

Each Bidder shall comply with all reasonable requests for additional information by the Debtors or their advisors, including requests for additional information regarding such Bidder's financial wherewithal to consummate and perform obligations in connection with the sale of the Assets or such other matters as may be subject to reasonable inquiry by the Debtors. Failure by the Bidder to comply with requests for additional information may be a basis for the Debtors to determine that a bid made by the Bidder is not a Qualified Bid.

**"As Is, Where Is, With All Faults"**

The sale of the Assets shall be on an "as is, where is, with all faults" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or estates, except to the extent specifically set forth in the purchase agreement between the Debtors and the Successful Bidder.  All of the Debtors' right, title and interest in and to the Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "Interests") except as otherwise set forth in the Stalking Horse APA or as KeyBank may agree with any Qualified Bidders, with such Interests to attach to the net proceeds of the sale of the Assets, with the same validity and priority as existed immediately prior to such sale.

Each Bidder shall be deemed to acknowledge and represent that it has had an opportunity to inspect and examine the Assets prior to making its offer, that such Bidder has relied solely upon its own independent review, investigation and/or inspection of any documents in making its bid, and that such Bidder did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets or the completeness of any information provided in connection with the bidding process, in each case except as expressly stated in the Marked Purchase Agreement (or, with respect to the Stalking Horse Purchaser, the Stalking Horse APA).

**The Auction**

If a Qualified Bid by a Qualified Bidder is received by the Bid Deadline (other than the Stalking Horse APA), an auction (the "Auction") for the Assets shall take place at **10:00 a.m. (prevailing Eastern time) on October 18, 2018** at the offices of Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York, or at such other place and time as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids.  If, however, no such Qualified Bids are received by the Bid Deadline, then the Auction will not be held, the Stalking Horse APA shall be the Successful Bid and the Stalking Horse Purchaser shall be the Successful Bidder.

Auction Rules:

i.      Only Qualified Bidders who have submitted a Qualified Bid and their authorized representatives will be eligible to attend and participate at the Auction.  Notwithstanding the foregoing, an authorized representative and

5

counsel for each of KeyBank, the Committee, Pine Street Capital Partners II, LP, Patriot Capital III SBIC, L.P., the Development Authority of the North Country, and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied-Industrial and Service Workers International Union may attend the Auction. Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale.

ii.    At the commencement of the Auction, the Debtors shall announce the Qualified Bid that they, in consultation with KeyBank and the Committee, have determined represents the highest or otherwise best bid for the Assets (the "Starting Qualified Bid"), the overall consideration value ascribed to such bid (the "Bid Value"), and any other distinguishing features (including, without limitation, any addition, deletion or modification to the terms of the Stalking Horse APA), which, in the opinion of the Debtors after consultation with KeyBank and the Committee, make the Starting Qualified Bid the highest or otherwise best offer for the Assets. The Starting Qualified Bid, if not the Stalking Horse APA, must be at least higher in overall consideration by the amount of the Initial Minimum Overbid. Notwithstanding the foregoing, the Starting Qualified Bid shall not need to necessarily exceed the Initial Minimum Overbid if it includes a cash component and has been approved by KeyBank, in consultation with the Debtors, subject to eventual approval of the Bankruptcy Court if the Stalking Horse Purchaser is not the Successful Bidder.

iii.   Each Qualified Bidder present at the Auction will be permitted to increase its Qualified Bid (such increased Qualified Bid, a "Qualified Overbid"), provided that such Qualified Overbid(s) must exceed the Bid Value of the Starting Qualified Bid or, if applicable, the highest or otherwise best Qualified Overbid, by at least fifty thousand dollars ($50,000) (the "Bidding Increment"). During the course of the Auction, the Debtors, in consultation with KeyBank and the Committee, will inform the participants which Qualified Overbid reflects the then-highest or otherwise best offer for the Assets and the Bid Value ascribed thereto. The Debtors shall not consider any subsequent bid received at the Auction unless the Bid Value of such bid, as determined by the Debtors in consultation with KeyBank and the Committee, exceeds the Bid Value of the Starting Qualified Bid or the then-highest Qualified Overbid by at least the Bidding Increment.

iv.    The Auction may be adjourned as the Debtors deem appropriate. Reasonable notice of such adjournment and the time and place for the resumption of the Auction shall be given to all Qualified Bidders that have submitted a Qualified Bid.

v.     The Stalking Horse Purchaser shall have the right to include up to the amount of the Break-Up Fee in the amount of any subsequent bids that it

makes at the Auction and, in the event that the Stalking Horse Purchaser elects to do so and is the Successful Bidder as a result of a subsequent bid made at the Auction, the Stalking Horse Purchaser shall be entitled to credit the amount of any Break-Up Fee included in its subsequent bid as follows: (i) against any cash consideration due at closing, and then (ii) against the amount of the Bridge Loan (as defined in the Stalking Horse APA), provided, however, that such credit shall in no instance serve to reduce the amount of the Deposit or the Post-Closing Payment (each as defined in the Stalking Horse APA) to be delivered by the Buyer in cash pursuant to the terms of the Stalking Horse APA.

vi.     At the conclusion of the Auction, the Debtors shall announce the bid made pursuant to the Bidding Procedures that represents, in the Debtors' judgment after consultation with KeyBank and the Committee, the highest or otherwise best offer for the Assets (the "Successful Bid") and the Bidder submitting such bid (the "Successful Bidder").  The Debtors may also, in their discretion, announce the next-highest or otherwise best offer for the Assets (the "Back-Up Bid") and the party submitting such bid (the "Back-Up Bidder").  Prior to the entry of the Sale Order, the Debtors shall announce their intention to either (i) pursue a transaction with the Successful Bidder (or the Back-Up Bidder), or (ii) not proceed with the sale of the Assets.  If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared the Successful Bid (or the Back-Up Bid) at the Auction, (ii) definitive documentation has been executed in respect thereof, and (iii) the Court has approved the sale to the Successful Bidder (or Back-Up Bidder).  Any acceptance by the Debtors is conditioned upon approval by the Court of the Successful Bid (or Back-Up Bid) and the entry of an order approving such Successful Bid (or Back-Up Bid).

vii.    No bids submitted after the conclusion of the Auction shall be considered unless a motion to reopen the Auction is made on notice, prior to the Sale Hearing, to all Qualified Bidders who attended and submitted a bid at the Auction and such motion is granted by the Court.

**Other Terms**

All Qualified Bids, the Auction, and the Bidding Procedures are subject to such additional terms and conditions as may be announced by the Debtors and which are not inconsistent with the Bidding Procedures Order or the Stalking Horse APA.

**Irrevocability of Certain Bids**

The Successful Bid shall remain irrevocable in accordance with the terms of the purchase agreement executed by the Successful Bidder.  The Back-Up Bid shall be irrevocable until the earliest of:  (i) 45 days after entry of the Sale Order approving the Successful Bid; (ii) closing of the sale to the Successful Bidder; and (iii) such date as the Debtors affirm in

7

writing that the Debtors do not intend to proceed with a sale of the Assets to the Back-Up Bidder (the "Outside Back-Up Date").  Following the entry of the Sale Order, if the Successful Bidder fails to consummate the purchase of the Assets because of a breach or failure to perform on the part of the Successful Bidder, the Back-Up Bid will be deemed to be the new Successful Bid, and the Debtors will be authorized, but not required, to consummate the sale with the Back-Up Bidder without further order of the Court.  In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtors and the Debtors shall have the right to seek any and all other remedies and damages from the defaulting Successful Bidder.  For the avoidance of doubt, if the defaulting Successful Bidder is the Stalking Horse Purchaser, the Stalking Horse Purchaser shall not be entitled to the Break-Up Fee.

The Debtors will present the results of the Auction to the Court at the Sale Hearing (as defined below), at which time certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that (i) the Auction was conducted and the Successful Bidder was selected in accordance with these Bidding Procedures , (ii) the Auction was fair in substance and procedure, and (iii) consummation of the sale contemplated by the Successful Bid will provide the highest or otherwise best value for the Assets and is in the best interests of the Debtors and their creditors.

**Sale Hearing**

A hearing to consider approval of the sale of the Assets to the Successful Bidder (the "Sale Hearing") will be held before the Honorable Margaret Cangilos-Ruiz, United States Bankruptcy Judge, U.S. Federal Building and Courthouse, 100 S. Clinton Street, Syracuse, New York 13261, on **October 19, 2018 at 10:00 a.m. (prevailing Eastern time)**, or at such other time thereafter as counsel may be heard.  The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

**Return of Deposit**

Except as otherwise provided in this paragraph with respect to any Successful Bid and any Back-Up Bid, the Deposits of all Qualified Bidders that submitted such a deposit under the Bidding Procedures shall be returned upon or within three (3) business days after the date on which the Bankruptcy Court enters an order approving the sale of the Assets to the Successful Bidder or otherwise concludes the Sale Hearing without adjournment.  The Deposit of the Successful Bidder shall be held until the closing of the sale of the Assets and applied in accordance with the Successful Bid or returned in accordance with the Successful Bidder's purchase agreement.  The Deposit of the Back-Up Bidder shall be returned upon or within five business (5) days after the Outside Back-Up Date.

**Failure to Close**

If the Successful Bidder fails to consummate the transaction in accordance with the terms of the purchase agreement executed by the Successful Bidder by the closing date contemplated in the purchase agreement agreed to by the parties for any reason (except in the case of the Stalking Horse Purchaser, in which case the termination provisions in the Stalking

8

Horse APA shall apply to the extent applicable), the Debtors shall:  (i) retain the Successful Bidder's Deposit; (ii) maintain the right to pursue all available remedies, whether legal or equitable; and (iii) be free to consummate the proposed transaction with the Back-Up Bidder at the highest price bid by the Back-Up Bidder at the Auction, without the need for an additional hearing or order of the Court.

**Reservation of Rights**

Except as otherwise provided in the Stalking Horse APA or the Bidding Procedures Order, the Debtors reserve the right, after consultation with KeyBank and the Committee, and subject to conformity with the Bidding Procedures, to:  (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or best proposal; (iv) reject any bid that the Debtors deem to be (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtors and their estates; (v) remove some of the Assets from the Auction; (vi) waive terms and conditions set forth herein with respect to all Bidders; (vii) impose additional terms and conditions with respect to all Bidders; (viii) extend the deadlines set forth herein; (ix) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; and (x) modify the Bidding Procedures, as the Debtors may determine to be in the best interests of their estates, or to withdraw the Motion and abandon the sale process at any time with or without prejudice.

**Expenses**

All Bidders presenting bids shall bear their own expenses in connection with the proposed sale, whether or not such sale is ultimately approved.

* * *

9

# **SCHEDULE 2**

## **To Bidding Procedures Order**

[Notice of Auction and Sale Hearing]

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Chapter 11 |
| Carthage Specialty Paperboard, Inc., *et al.*,[1] | ) | Case No. 18-30226 (MCR) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |
| | ) | |

## NOTICE OF AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.       On September 6, 2018, the above-captioned debtors and debtors in possession (the "Debtors") filed a motion (the "Motion")[2] [Docket No. 254] for entry of orders, among other things:  (i) approving bidding procedures (the "Bidding Procedures") in connection with the sale of substantially all of the Debtors' assets (the "Assets"); (ii) scheduling an auction (the "Auction") and a hearing (the "Sale Hearing") to consider the sale of the Assets and setting objection and bidding deadlines with respect to the sale of the Assets; (iii) approving the form and manner of notice of the Auction and the Sale Hearing; (iv) approving the terms of the Stalking Horse APA submitted by the Stalking Horse Purchaser (defined below), subject to higher and better bids and the proposed Break-Up Fee; and (v) granting related relief.  The Motion additionally requests entry of an order or orders:  (i) authorizing the sale of the Assets free and clear of liens, claims, encumbrances, and interests; (ii) authorizing and approving the assumption, assignment and/or transfer of Executory Contracts and Unexpired Leases; and (iii) granting related relief.

2.       The Debtors are seeking to sell the Assets to Long Falls Paperboard, LLC (the "Stalking Horse Purchaser"), or to the Successful Bidder or Back-Up Bidder as determined at the Auction.  Approval of the sale of the Assets may result in, among other things, the assumption, assignment and/or transfer by the Debtors of certain executory contracts and leases.  If you are a party to an executory contract or lease with the Debtors, you will receive a separate notice that contains relevant dates and other information that may impact you as a party to an executory contract or lease.

3.       On **September 24**, **2018**, the United States Bankruptcy Court for the Northern District of New York (the "Court") entered an order approving the Bidding Procedures (the "Bidding Procedures Order").  Pursuant to the Bidding Procedures Order, if the Debtors receive Qualified Bids (as defined in the Bidding Procedures), an Auction for the Assets will be held on

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: Carthage Specialty Paperboard, Inc. (7076) and Carthage Acquisition, LLC (6503).

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

**October 18, 2018, at 10:00 a.m. (prevailing Eastern time)** at the offices of Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York, or at such other place and time as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids. Only Qualified Bidders who have submitted a Qualified Bid in accordance with the Bidding Procedures, attached to the Bidding Procedures Order as Schedule 1, by no later than **October 12**, **2018 at 12:00 noon (prevailing Eastern time)** (the "Bid Deadline") may participate at the Auction. Any party that wishes to take part in this process and submit a bid for the Assets must submit their competing bid prior to the Bid Deadline and in accordance with the Bidding Procedures.

4.     The Sale Hearing to consider approval of the sale of the Assets free and clear of all liens, claims, and encumbrances will be held before the Honorable Margaret Cangilos-Ruiz, United States Bankruptcy Judge, U.S. Federal Building and Courthouse, 100 S. Clinton Street, Syracuse, New York 13261, on **October 19**, **2018 at 10:00 a.m. (prevailing Eastern time),** or at such other time thereafter as counsel may be heard. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

5.     Objections, if any, to the sale of the Assets, or the relief requested in the Motion (other than with respect to cure amounts and adequate assurance which are subject to a separate notice) must:  (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the Northern District of New York on or before **4:00 p.m. (prevailing Eastern time) on October 12**, **2018**, or such later date and time as the Debtors may agree; and (d) be served so as to be received no later than 4:00 p.m.  (prevailing Eastern time) on the same day, upon counsel to the Debtors, Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York 13202, Attn: Stephen A. Donato, Esq. and Grayson T. Walter, Esq. and counsel to the Stalking Horse Purchaser, Phillips Lytle LLP, One Canalside, 125 Main Street, Buffalo, New York, Attn: William Brown, Esq.  UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE COURT AND THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER HEARING AND NOTICE.

6.     This Notice of Auction and Sale Hearing is subject to the fuller terms and conditions of the Motion, the Bidding Procedures Order, and the Bidding Procedures, which shall control in the event of any conflict and the Debtors encourage all parties-in-interest to review such documents in their entirety.  THE MOTION SEEKS AUTHORITY TO SELL SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS TO THE FULLEST EXTENT PERMISSIBLE UNDER SECTION 363(f) OF THE BANKRUPTCY CODE AND APPLICABLE LAW.  ALL HOLDERS OF LIENS, CLAIMS, ENCUMBRANCES OR OTHER INTERESTS WITH RESPECT TO THE DEBTORS OR THEIR ASSETS ARE ENCOURAGED TO CONSULT THEIR OWN LEGAL COUNSEL REGARDING HOW THE RELIEF REQUESTED IN THE MOTION MAY AFFECT THEIR RIGHTS.  Parties interested in receiving more information regarding the sale of the Assets or to obtain a copy of any of the foregoing documents may make a written request to counsel to the Debtors, Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York 13202, Attn: Stephen A. Donato, Esq. and Grayson T. Walter, Esq.  In addition, copies of the Motion and the Bidding Procedures Order

(including the Bidding Procedures) can be found on the Court's electronic case filing (ECF) website, http://ecf.nyeb.uscourts.gov, and are on file with the Clerk of the Bankruptcy Court, U.S. Federal Building and Courthouse, 100 S. Clinton Street, Syracuse, New York 13261.

Dated: _____, 2018
      Syracuse, New York           **BOND, SCHOENECK & KING, PLLC**


By:   _____
        Stephen A. Donato, Bar Roll No. 101522
        Grayson T. Walter, Bar Roll No. 518237
        Sarah M. Harvey, Bar Roll No. 519993
        Office and Post Office Address:
        One Lincoln Center
        Syracuse, New York 13202
        Tel: (315) 218-8000
        Fax: (315) 218-8100
        Email: sdonato@bsk.com
                gwalter@bsk.com
                sharvey@bsk.com

        *Counsel to the Debtors and Debtors in Possession*

3218329.3

# **SCHEDULE 3**

## **To Bidding Procedures Order**

[Notice of Assumption and Assignment]

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Chapter 11 |
| Carthage Specialty Paperboard, Inc., *et al.*,[1] | ) Case No. 18-30226 (MCR) |
| | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) |
| | ) |

## NOTICE OF ASSUMPTION, ASSIGNMENT AND/OR TRANSFER

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On **September 24**, **2018**, the United States Bankruptcy Court for the Northern District of New York (the "Court") entered an order (the "Bidding Procedures Order"),[2] pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors in possession (the "Debtors") approving, among other things, the fixing of cure amounts (the "Cure Amounts") related to the Debtors' assumption, assignment and/or transfer of certain executory contracts, unexpired leases, and other agreements listed on **Exhibit A** annexed hereto (each, an "Executory Contract" or "Unexpired Lease" and collectively the "Executory Contracts and Unexpired Leases") in connection with the sale of substantially all of the Debtors' assets (the "Assets").   The Debtors will assume, assign, and/or transfer the Executory Contracts and Unexpired Leases to the Successful Bidder or Back-Up Bidder for the Assets under the bidding procedures (the "Bidding Procedures") approved by the Bankruptcy Court and attached to the Bidding Procedures Order as Schedule 1.

2.      The Debtors believe that any and all defaults (other than defaults arising from the filing of the Chapter 11 Cases) and actual pecuniary losses under the Executory Contracts and Unexpired Leases can be cured by the payment of the respective Cure Amounts listed on **Exhibit A** annexed hereto.

3.      Any objections to (i) the assumption, assignment and/or transfer of an Executory Contract or Unexpired Lease, or (ii) the amount asserted on **Exhibit A** as the Cure Amount (each, a "Cure Amount/Assignment Objection"), must be in writing and set forth with specificity the nature of the objection and the cure amount that the objecting party believes should be paid in connection with the assumption of its Executory Contract or Unexpired Lease (the "Claimed

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: Carthage Specialty Paperboard, Inc. (7076) and Carthage Acquisition, LLC (6503).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

Cure Amount"). In addition, if the Debtors identify additional executory contracts or unexpired leases that might be assumed by the Debtors and assigned to the Successful Bidder or Back-Up Bidder which are not set forth in this Notice of Assumption and Assignment, the Debtors shall promptly send a supplemental notice (a "Supplemental Notice of Assumption and Assignment") to the applicable counterparties to such additional executory contracts and unexpired leases.

4.      To be considered a timely Cure Amount/Assignment Objection, the Cure Amount/Assignment Objection must be filed with the Bankruptcy Court and served upon counsel to the Debtors, Bond, Schoeneck & King, PLLC, One Lincoln Center, Syracuse, New York 13202, Attn: Stephen A. Donato, Esq. and Grayson T. Walter, Esq. and counsel to the Stalking Horse Purchaser, Phillips Lytle LLP, One Canalside, 125 Main Street, Buffalo, New York, Attn: William Brown, Esq., by the latter of (i) **4:00 p.m. (prevailing Eastern time) on October 8, 2018**; or, (ii) solely with respect to any Executory Contract or Unexpired Lease which is the subject of a Supplemental Notice of Assumption and Assignment, ten (10) days after service of the relevant Supplemental Notice of Assumption and Assignment.

5.      If a Cure Amount/Assignment Objection is timely filed, the Debtors may, in their sole discretion, resolve any Cure Amount/Assignment Objection by mutual agreement with the objecting counterparty to any Executory Contract or Unexpired Lease without further order of the Court. In the event that the Debtors and any objecting party are unable to consensually resolve any Cure Amount/Assignment Objection, a hearing with respect to that objection shall be held before the Honorable Margaret Cangilos-Ruiz, United States Bankruptcy Judge, United States Bankruptcy Court for the Northern District of New York, U.S. Federal Building and Courthouse, 100 S. Clinton Street, Syracuse, New York, at **10:00 a.m. (prevailing Eastern time) on October 19, 2018**.

6.      Unless a Cure Amount/Assignment Objection is timely filed and served, the assumption, assignment and/or transfer of the applicable Executory Contract or Unexpired Lease may proceed without further notice at the hearing to approve the sale of the Assets.

7.      All parties who do not file and serve a timely Cure Amount/Assignment Objection shall (i) be deemed to have waived and released any and all rights to assert against the Debtors, the Successful Bidder or Back-Up Bidder, cure amounts different from the Cure Amounts listed on **Exhibit A** hereto, (ii) shall be deemed to have consented to the assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease, and (iii) shall be forever barred and estopped from asserting or claiming against the Debtors, the Successful Bidder or the Back-Up Bidder, or any assignee of such Executory Contract or Unexpired Lease that any additional amounts are due or defaults exist, or prohibitions or conditions to assignment exist or must be satisfied (other than with respect to the ability of any Successful Bidder or Back-Up Bidder who is not the Stalking Horse Purchaser to provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code) with respect to such Executory Contract or Unexpired Lease.

8.      The Debtors, the Successful Bidder or the Back-Up Bidder, as the case may be, and subject to the terms of the Successful Bid or the Back-Up Bid, may determine to exclude any Executory Contract or Unexpired Lease from the list of Assets to be sold no later than the closing of the sale of the Assets, or, if the Court determines at any hearing on a Cure

Amount/Assignment Objection that the applicable cure amount for such Executory Contract or Unexpired Lease is greater than the Cure Amount proposed by the Debtors, no later than five (5) business days following the date of such determination.  The non-debtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice mailed within two (2) business days of such determination.

9.      IF YOU AGREE WITH THE CURE AMOUNTS PROPOSED BY THE DEBTORS AND DO NOT OTHERWISE OBJECT TO THE DEBTORS' ASSUMPTION, ASSIGNMENT AND/OR TRANSFER OF YOUR EXECUTORY CONTRACT OR UNEXPIRED LEASE, YOU NEED NOT TAKE ANY FURTHER ACTION.

10.     Copies of the Bidding Procedures Order and other relevant documents can be found on the Court's electronic case filing (ECF) website, http://ecf.nyeb.uscourts.gov, and are on file with the Clerk of the Bankruptcy Court, U.S. Federal Building and Courthouse, 100 S. Clinton Street, Syracuse, New York 13261.

11.     The Debtors' decision to sell, assign and/or transfer to the Successful Bidder or Back-Up Bidder the Executory Contracts and Unexpired Leases is subject to Court approval and to the closing of the sale of the Assets (the "Closing").  Accordingly, absent such Closing, none of the Executory Contracts or Unexpired Lease shall be deemed to be sold, assigned and/or transferred, and they shall in all respects be subject to further administration under the Bankruptcy Code.  The inclusion of any document on the list of Executory Contracts and Unexpired Leases shall not constitute or be deemed to be a determination or admission that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

Dated: _____, 2018
     Syracuse, New York         **BOND, SCHOENECK & KING, PLLC**

By:   _____
          Stephen A. Donato, Bar Roll No. 101522
          Grayson T. Walter, Bar Roll No. 518237
          Sarah M. Harvey, Bar Roll No. 519993
          Office and Post Office Address:
          One Lincoln Center
          Syracuse, New York 13202
          Tel: (315) 218-8000
          Fax: (315) 218-8100
          Email: sdonato@bsk.com
                gwalter@bsk.com
                sharvey@bsk.com

          *Counsel to the Debtors and Debtors in Possession*

3

**<u>EXHIBIT A</u>**

**<u>To Notice of Assumption and Assignment</u>**

[Executory Contracts and Unexpired Leases]

[To be provided]

## **SCHEDULE 4**

### **To Bidding Procedures Order**

[Amendment 1 to Stalking Horse APA]

3218329.3

## AMENDMENT 1 TO ASSET PURCHASE AGREEMENT

**THIS AMENDMENT 1 TO ASSET PURCHASE AGREEMENT** (this "Amendment") is made and entered into as of September 21, 2018 between **CARTHAGE SPECIALTY PAPERBOARD, INC.**, a New York corporation (the "Seller") and **LONG FALLS PAPERBOARD, LLC**, a Washington limited liability company (the "Buyer").

## BACKGROUND

A.    Seller and Buyer entered into that certain Asset Purchase Agreement dated September 5, 2018 ("APA") pursuant to which Buyer agreed to purchase and Seller agreed to sell certain assets of Seller used in connection with the operation of Seller's paperboard manufacturing and marketing business.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the APA.

B.    Buyer and Seller now desire to amend the APA as set forth herein.

**NOW, THEREFORE**, in consideration of the premises and the mutual representations, warranties, covenants and agreements herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, agree as follows:

1.    Incorporation of Recitals.    The Recitals to this Amendment are hereby incorporated in this Amendment as if set forth below in full.

2.    Ratification.  Except as amended and modified hereby, each of Buyer and Seller hereby ratifies the APA and confirms that it remains in full force and effect in accordance with its terms.

3.    Amendment of APA.  The APA is hereby amended as follows:

(a)    Workers' Compensation Recovery.  Section 2.1(i) of the APA is hereby deleted in its entirety and replaced with the following amended Section 2.1(i):

"Workers' Compensation Recovery.  In the event Seller is able to recover any portion of its deposit being held by the New York State Workers' Compensation Board, the first $100,000 actually recovered by Seller, plus fifty-percent (50%) of any recovery in excess of $200,000; provided that in no event shall the payment to Buyer from such recovery exceed $400,000, and provided further that if such recovery is received by Seller prior to Closing, Buyer's portion of any such recovery will be credited against Buyer's obligation to make the Post-Closing Payment and if such recovery is received by Seller following the Closing, Buyer's portion of such recovery will be promptly remitted by Seller following receipt; and"

1

(b)    <u>Date of Entry of Bid Procedures Order</u>.  Section 3.2(a)(iii) of the APA is hereby amended by deleting "September 20, 2018" and inserting in its place "September 24, 2018".

(c)    <u>Trade Accounts Payable</u>.  Section 3.2(b) of the APA is hereby amended by inserting "post-petition" before each reference to "trade accounts payable".

(d)    <u>Access to Information</u>.  Section 6.11(a)(i) of the APA is hereby deleted in its entirety and replaced with the following revised Section 6.11(a)(i):

"Seller shall not be required to provide any information to Buyer relating to any discussions or negotiations the Seller may have engaged in with other potential purchasers of the Acquired Assets, however, (i) Seller shall advise the Buyer within one (1) Business Day if any other Person makes an offer, proposal or indication of interest to Seller, whether formal or informal (which, for the purposes of Section 6.11(a)(i) shall each be defined as an "Offer") (provided, however, that any Offer received less than two (2) Business Days prior to the bid deadline established by the Bid Procedures Order will be communicated to the Buyer no later than twenty-four (24) hours following receipt of such Offer), and with respect to any such Offer that Seller, either alone or in consultation with Key, deems to be better, Seller shall so inform Buyer and in such case, Seller shall provide the Offer to Buyer in its entirety, provided, that if Seller does not deem an Offer to be better, Seller shall be obligated only to disclose to Buyer the economic terms of the Offer, (ii) Seller shall provide Buyer with a reasonably detailed update on the status of any negotiations with any other Person regarding the sale of the Acquired Assets not less often than twice per week, and (iii) with respect to any Person who has made an Offer or for which an update has been provided under subsection (i) or (ii) of this Section 6.11(a)(i), such Person shall be named, except for two such Persons known to Seller that (A) have been actively engaged in pursuing a potential purchase of the Acquired Assets for an extended period of time prior to the date of this Agreement, or (B) who are touring or have toured the Carthage Property on or about September 19, 2018;"

4.    <u>Break-Up Fee and Expense Reimbursement</u>.  Notwithstanding anything to the contrary in the APA, Buyer and Seller agree that the Break-Up Fee, if earned and payable pursuant to the terms of the APA and the Bankruptcy Court's Bidding Procedures Order, shall be in the amount of $270,000 plus the value of all advances and contract work performed prior to the Auction pursuant to Section 6.18 of the APA, and that no separate expense reimbursement shall be earned or paid to Buyer.

5.    <u>Bid Increment</u>.  Notwithstanding anything to the contrary in the APA, Buyer and Seller agree that the minimum bid increment at the Auction shall be Fifty Thousand Dollars ($50,000), provided that the initial overbid at the Auction must also include an amount sufficient to pay any Break-Up Fee that would be payable to Buyer in the event of a sale of the Acquired Assets to an Alternate Bidder.

6.     <u>Entire Agreement</u>.  This Amendment, together with the APA, contain the entire agreement between the Buyer and Seller with respect to the subject matter hereof.  This Amendment may not be amended or supplemented, and no provisions hereof may be modified or waived, except by an instrument in writing signed by each of the parties hereto.

7.     <u>Counterparts</u>.  This Amendment may be executed in counterparts and by facsimile or other electronic means, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

8.     <u>Choice of Law</u>.  This Amendment shall be construed in accordance with the laws of the State of New York without giving effect to its choice of law rules.

*[signature page follows]*

3218139.3 9/24/20183218139.2

**IN WITNESS WHEREOF,** each of Buyer and Seller have executed and delivered this Amendment as of the date first written above.

**BUYER:**

**LONG FALLS PAPERBOARD, LLC**

By:  Long Falls Group LLC,
      its Member and Manager

By:  Human Capital Investments LLC,
      its Member

By: _____
Name:   Ben Rankin
Title:    Member

**SELLER:**

**CARTHAGE   SPECIALTY   PAPERBOARD, INC.**

By: _____
Name:
Title:

Doc #01-3150226.2

3218139.3 9/24/20183218139.2