**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| CARTHAGE SPECIALTY | ) | Case No. 18-30226 (MCR) |
| PAPERBOARD, INC., | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

# PLAN OF LIQUIDATION OF DEBTOR
## CARTHAGE SPECIALTY PAPERBOARD, INC.

May 22, 2019

**BOND, SCHOENECK & KING, PLLC**
Stephen A. Donato
Grayson T. Walter
One Lincoln Center
Syracuse, New York 13202
Tel: (315) 218-8000
Fax: (315) 218-8100

*Attorneys for Debtor*
*Carthage Specialty Paperboard, Inc.*

3278801.4

# TABLE OF CONTENTS

**Page**

**ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION** ..............................1

Section 1.01    Definitions.................................................................................1
Section 1.02    Rules of Interpretation ............................................................8
Section 1.03    Computation of Time ...............................................................9

**ARTICLE II ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS** ...............9

Section 2.01    Administrative Claims .............................................................9
Section 2.02    Priority Tax Claims ..................................................................9

**ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS** .................................9

Section 3.01    Generally..................................................................................9
Section 3.02    Unimpaired Classes ...............................................................10
Section 3.03    Impaired Classes Entitled to Vote...........................................10
Section 3.04    Impaired Classes Not Entitled to Vote....................................10

**ARTICLE IV PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS** .........10

Section 4.01    Class 1 Non-Tax Priority Claims.............................................10
Section 4.02    Class 2 Miscellaneous Secured Claims....................................11
Section 4.03    Class 3 KeyBank Claims.........................................................11
Section 4.04    Class 4 General Unsecured Claims...........................................11
Section 4.05    Class 5 Equity Interests...........................................................11
Section 4.06    Special Provision Regarding Unimpaired Claims .....................11

**ARTICLE V ACCEPTANCE OR REJECTION OF THE PLAN** .................................11

Section 5.01    Classes Entitled to Vote...........................................................11
Section 5.02    Acceptance by an Impaired Class of Claims or Interest .............11
Section 5.03    Presumed Acceptances by Unimpaired Classes ........................12
Section 5.04    Classes Deemed to Reject Plan.................................................12
Section 5.05    Summary of Classes Voting on the Plan....................................12
Section 5.06    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.........12

**ARTICLE VI MEANS FOR IMPLEMENTATION OF THE PLAN**...................................12

Section 6.01    Vesting of Assets ....................................................................12
Section 6.02    Responsible Person to Effectuate Distributions..........................12
Section 6.03    Preservation of Litigation Claims .............................................13
Section 6.04    Corporate Authority ................................................................13
Section 6.05    Retention of Professionals .......................................................13
Section 6.06    Compensation of the Responsible Person...................................13
Section 6.07    Liability...................................................................................13
Section 6.08    Term of Injunctions or Stays....................................................13
Section 6.09    Books and Records ..................................................................14
Section 6.10    Dissolution of Creditors' Committee.........................................14
Section 6.11    Cancellation of Existing Securities...........................................14

3278801.4

Section 6.12    Closing of Chapter 11 Case ....................................................................14
Section 6.13    Winding up of the Reorganized Debtor ...................................................15

**ARTICLE VII TREATMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES ............................................................15**

Section 7.01    Rejection of Contracts.............................................................................15
Section 7.02    Rejection Damages Bar Date ..................................................................15

**ARTICLE VIII PROVISIONS GOVERNING DISTRIBUTIONS ...........................15**

Section 8.01    Disbursing Agent ....................................................................................15
Section 8.02    Effective Date Payments and Funding....................................................16
Section 8.03    Subsequent Funding................................................................................16
Section 8.04    Reversion to KeyBank Residual Claims Fund.........................................17
Section 8.05    Initial Distribution..................................................................................17
Section 8.06    Subsequent Distributions .......................................................................17
Section 8.07    Final Distribution ...................................................................................17
Section 8.08    No Payments of Fractional Dollars.........................................................17
Section 8.09    De Minimis Distributions; Charitable Donation......................................17
Section 8.10    Interest on Claims ...................................................................................18
Section 8.11    Delivery of Distributions and Undeliverable or Unclaimed
                Distributions............................................................................................18
Section 8.12    Record Date for Distributions .................................................................19
Section 8.13    Allocation of Plan Distributions Between Principal and Interest ...........19
Section 8.14    Means of Cash Payment..........................................................................19
Section 8.15    Setoffs ....................................................................................................19
Section 8.16    Release of Liens ......................................................................................19

**ARTICLE IX PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT
AND UNLIQUIDATED CLAIMS ...........................................20**

Section 9.01    Objection Deadline; Prosecution of Objections........................................20
Section 9.02    No Distributions Pending Allowance .......................................................20
Section 9.03    Disputed Claims Reserve ........................................................................20
Section 9.04    Distributions After Allowance ................................................................21
Section 9.05    Reversion to General Unsecured Claim Fund ..........................................21

**ARTICLE X ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE
CLAIMS.....................................................................................21**

Section 10.01   Professional Fee Claims..........................................................................21
Section 10.02   Other Administrative Claims ..................................................................22

**ARTICLE XI CONFIRMATION AND CONSUMMATION OF THE PLAN ...................22**

Section 11.01   Conditions to Confirmation ....................................................................22
Section 11.02   Conditions to Effective Date...................................................................23
Section 11.03   Waiver of Conditions..............................................................................23

**ARTICLE XII EFFECT OF PLAN CONFIRMATION ON CLAIMS AND INTERESTS** .........................................................................................**23**

    Section 12.01  No Discharge of Claims Against Debtor ....................................23

    Section 12.02  Termination of Subordination Rights and Settlement of Related Claims and Controversies ..............................................23

    Section 12.03  Exculpation and Limitation of Liability ....................................24

    Section 12.04  Releases by Holders of Claims ..................................................24

    Section 12.05  Injunction ..................................................................................24

    Section 12.06  Survival of Certain Litigation Claims........................................25

**ARTICLE XIII RETENTION OF JURISDICTION** ..............................................**25**

    Section 13.01  Exclusive Jurisdiction of Bankruptcy Court .............................25

**ARTICLE XIV MISCELLANEOUS PROVISIONS** .............................................**27**

    Section 14.01  Binding Effect............................................................................27

    Section 14.02  Payment of Statutory Fees ........................................................28

    Section 14.03  Amendment or Modification of this Plan ..................................28

    Section 14.04  Revocation, Withdrawal or Non-Consummation ......................28

    Section 14.05  Effectuating Documents and Further Transactions....................28

    Section 14.06  Exemption from Transfer Taxes .................................................28

    Section 14.07  Good Faith ...............................................................................29

    Section 14.08  Severability of Plan Provisions..................................................29

    Section 14.09  Successors and Assigns.............................................................29

    Section 14.10  Notice.........................................................................................29

    Section 14.11  Governing Law ..........................................................................30

    Section 14.12  Tax Reporting and Compliance ..................................................30

    Section 14.13  Filing of Additional Documents .................................................30

    Section 14.14  No Waiver or Estoppel................................................................30

    Section 14.15  Request for Court Hearing .........................................................30

3278801.4

# INTRODUCTION

Carthage Specialty Paperboard, Inc., the debtor and debtor in possession in the above-captioned Chapter 11 Case (the "Debtor"), hereby proposes the following Plan for the liquidation of the Debtor and the distribution of the Net Proceeds received from such liquidation, including, but not limited to proceeds of the Bankruptcy Court approved sale of substantially all of the Debtor's assets in resolution of the outstanding Claims against and Interests in the Debtor. Capitalized terms used herein shall have the meanings ascribed to such terms in ARTICLE I of this Plan.

The Debtor is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.

Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject this Plan cannot be solicited from the Holder (as defined in Section 1.01 of this Plan) of a Claim or Interest until such time as the Disclosure Statement has been approved by the Bankruptcy Court and distributed to Holders of Claims and Interests. **[The Disclosure Statement was approved by the Bankruptcy Court by order entered on _____, 2019, and has been distributed simultaneously with this Plan to all parties whose votes are being solicited.]** The Disclosure Statement contains, among other things, a discussion of the Debtor's history, business, properties, former and current operations, a summary and analysis of this Plan and certain related matters. ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in ARTICLE XIV of this Plan, the Debtor expressly reserves its rights to alter, amend, modify, revoke or withdraw this Plan, one or more times, prior to its substantial consummation.

# ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

Section 1.01   Definitions.  For purposes of this Plan, except as otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined herein shall have the meanings set forth below.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.  As used herein:

"Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including, but not limited to, (a) any actual and necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating and liquidating the business of the Debtor, (b) Professional Fee Claims, (c) any Claim specified in section 503(b)(9) of the Bankruptcy Code and (d) all fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code.

"Administrative Claims Bar Date" means the deadline for Filing proofs of Administrative

Claims which shall be the date which is thirty (30) days after the Effective Date, provided, however, that (i) proofs of any Administrative Claims which are subject to an earlier Bar Date as established in the Bar Date Notice or any Bar Date Order must be Filed by such earlier Bar Date and (ii) the submission of requests for payment of Professional Fee Claims shall be governed by the provisions of <u>Section 10.01</u> of this Plan.

"<u>Administrative/Priority Claims Reserve</u>" means the Cash reserve established by the Reorganized Debtor from the Assets and funded from time to time to pay all Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims and Miscellaneous Secured Claims that are Allowed or may in the future become Allowed under this Plan, but which are not payable on the Effective Date pursuant to the terms of <u>Article II</u> of this Plan.

"<u>Allowed</u>" means, with respect to a Claim or any portion thereof, a Claim or portion thereof:  (a) that has been allowed by a Final Order; (b) which has been Scheduled by the Debtor as not disputed, not contingent and not unliquidated, for which no proof of claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Deadline; (c) as to which a proof of claim in a liquidated and non-contingent amount has been timely Filed and as to which no objection has been Filed by the Claims Objection Deadline or any objection has been settled or withdrawn, or has been denied by a Final Order; or (d) that is expressly allowed by the terms of this Plan.

"<u>Assets</u>" means all Cash, property, rights and Causes of Action of the Estate as of the Effective Date.

"<u>Avoidance Actions</u>" means causes of action arising under sections 502, 510, 541, 542, 544, 545, 547 through 551 or 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such causes of action.

"<u>Bankruptcy Code</u>" means the Bankruptcy Reform Act of 1978, as amended and codified in title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*.

"<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Northern District of New York or any other court with jurisdiction over the Chapter 11 Case.

"<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended.

"<u>Bar Date</u>" means (i) with respect to any Claim that is subject to a Bar Date Order, the applicable deadline for Filing proofs of claim established in the relevant Bar Date Order; (ii) with respect to Administrative Claims, the Administrative Claims Bar Date; and (iii) with respect to all other Claims, the applicable deadline for Filing proofs of claim established by the Bankruptcy Court pursuant to the Bar Date Notice.

"<u>Bar Date Notice</u>" means the *Notice of Chapter 11 Bankruptcy Case* [Docket No. 44] entered by the Bankruptcy Court on March 5, 2018.

2

"Bar Date Order" means any Final Order of the Bankruptcy Court which establishes a deadline for filing a proof of claim with respect to any Claim.

"Books and Records" means all books and records of the Debtor, including, without limitation, all documents and communications of any kind, whether physical or electronic.

"Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

"Buyer Related Party" means Ox Industries, LLC, a Pennsylvania limited liability company, Ox Specialty Paper, LLC f/k/a Carthage Paper Limited, LLC, a Pennsylvania limited liability company, Carthage Real Estate Investments, LLC, a Pennsylvania limited liability company and each of their respective directors, officers, members, principals, equity holders, employees, agents, affiliates, advisors, attorneys or other representatives, and each of their respective successors, assigns and transferees.

"Cash" means legal tender of the United States of America and equivalents thereof.

"Causes of Action" means any and all actions, causes of action, suits, controversies, rights to legal remedies, rights to equitable remedies and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed or undisputed, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, but excluding any Avoidance Actions.

"Chapter 11 Case" means the Debtor's case pending under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

"Claim" means a "claim," as defined in section 101(5) of the Bankruptcy Code and pertaining to the Chapter 11 Case.

"Claims Objection Deadline" means as applicable (except for Administrative Claims) (a) the day that is the later of (i) the first Business Day that is one hundred eighty (180) days after the Effective Date, and (ii) as to proofs of claim Filed after the Bar Date, the first Business Day that is one hundred eighty (180) days after a Final Order is entered deeming the late Filed Claim to be treated as timely Filed, or (b) such later date as may be established by the Bankruptcy Court.

"Class" means a category of Holders of Claims or Interests, as described in ARTICLE II and ARTICLE III of this Plan.

"Collateral" means any interest in property of the Debtor's Estate that is subject to a valid, enforceable and unavoidable Lien to secure a Claim.

"Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court in this Chapter 11 Case.

3

"Confirmation Hearing" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

"Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

"Creditors' Committee" means the statutory committee of unsecured creditors appointed in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code.

"DANC Claim" means any Claim asserted by the Development Authority of the North Country.

"Debtor" means Carthage Specialty Paperboard, Inc., as debtor and debtor in possession in the Chapter 11 Case.

"Disallowed" means, with respect to a Claim, or any portion thereof, that such Claim or portion thereof: (a) has been disallowed by either a Final Order or pursuant to a settlement or stipulation between the Debtor or the Reorganized Debtor and the Holder of the Claim; or (b) (i) is Scheduled at zero dollars ($0) or as contingent, disputed or unliquidated and (ii) as to which a Bar Date has been established but no proof of claim has been Filed or deemed timely Filed pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law.

"Disclosure Statement" means the written disclosure statement (including all schedules and exhibits thereto or referenced therein) that relates to this Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as the same may be amended, modified or supplemented.

"Disputed" means, with respect to a Claim, or any portion thereof, that such Claim or portion thereof is neither an Allowed Claim nor a Disallowed Claim, and includes, without limitation, Claims that: (a) have not been Scheduled by the Debtor or have been Scheduled at zero, or as contingent, unliquidated or disputed; or (b) are the subject of an objection Filed in the Bankruptcy Court that has not been withdrawn or overruled by a Final Order of the Bankruptcy Court.

"Disputed Claims Reserve" means the reserve of Cash established and maintained by the Reorganized Debtor for Holders of Class 4 Claims on account of Disputed Class 4 Claims, the amount of which shall be determined from time to time in accordance with Section 9.03 of this Plan.

"Effective Date" means the Business Day this Plan becomes effective as provided in Section 11.02 of this Plan.

"Environmental Escrow" means the funds held in escrow which are the subject of the adversary proceeding entitled *Hirschey et al v. Carthage Specialty Paperboard, Inc. et al* (18-50010-5-mcr).

4

"Estate" means the estate of the Debtor created under section 541 of the Bankruptcy Code.

"Face Amount" means:  (a) when used in reference to a Disputed Claim or Disallowed Claim, the full stated amount of the Claim claimed by the Holder in any proof of claim timely Filed with the Bankruptcy Court or otherwise deemed timely Filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law or, if the Holder of a Claim fails to state a sum certain or asserts that a Claim is unliquidated or contingent, the amount of such Claim as estimated by the Responsible Person in good faith; and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

"File," "Filed" or "Filing" means file, filed or filing with the Bankruptcy Court in the Chapter 11 Case.

"Final Decree" means a final decree closing the Chapter 11 Case entered by the Bankruptcy Court pursuant to rule 3022 of the Bankruptcy Rules.

"Final Distribution" has the meaning set forth in Section 8.08 of this Plan.

"Final Order" means an order or judgment, the operation or effect of which has not been stayed, reversed or amended and as to which order or judgment (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was timely Filed or, if timely Filed, remains pending.

"General Unsecured Claim" means any Claim that is not an Administrative Claim, Priority Tax Claim, Non-Tax Priority Claim, Miscellaneous Secured Claim, KeyBank Claim or Previously Satisfied Claim, including specifically, but without limitation, and only to the extent it may be deemed Allowed, the PBGC Claim.

"General Unsecured Claims Fund" shall mean the fund available for distribution to Holders of Allowed Class 4 General Unsecured Claims.

"Holder" means any Person or entity that has a Claim or Interest.

"Impaired" means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Indemnification Rights" means any obligations or rights of the Debtor to indemnify or contribute to the losses, liabilities or expenses of an Indemnitee pursuant to the Debtor's charter, bylaws or policy of providing indemnification, or applicable state law or specific agreement in respect of any claims, demands, suits, Causes of Action or proceedings against an Indemnitee based upon any act or omission related to an Indemnitee's service with, for or on behalf of such Debtor.

"Indemnitee" means all present and former directors, officers, employees, agents or representatives of the Debtor who are entitled to assert Indemnification Rights.

5

"Initial Distribution" means the distribution occurring on the Initial Distribution Date.

"Initial Distribution Date" means the date occurring as soon as practicable after the Administrative Claims Bar Date upon which the initial distributions are made with respect to Allowed Class 3 and Class 4 Claims.

"Interest" means the legal, equitable, contractual and other rights of the Holders of equity interests in the Debtor.

"KeyBank" means KeyBank National Association.

"KeyBank Claims" means all Claims of KeyBank against the Debtor.

"KeyBank Residual Claims Fund" means the fund available for distribution to KeyBank on account of the Class 3 KeyBank Claims.

"Lien" means a charge against or interest in property to secure payment of a debt or performance of an obligation.

"Litigation Claims" means all Causes of Action, claims, rights of action, suits, or proceedings for which the applicable statute of limitations has not expired, whether in law or in equity, whether known or unknown, that the Debtor or the Estate may hold against any Person.

"Miscellaneous Secured Claims" means Secured Claims (if any), other than the KeyBank Claims, secured by Collateral in which KeyBank does not have a Lien or that are otherwise entitled to priority over the KeyBank Claims with respect to any Collateral in which KeyBank does have a Lien.

"Net Proceeds" means all Cash proceeds from the sale or other disposition of an Asset minus all reasonable out-of-pocket direct costs, fees and expenses incurred in connection with such sale or other disposition, provisions for any sales or other tax due and owing as a consequence of such sale or other disposition, and other customary proration in connection with such sale or other disposition.

"Non-Tax Priority Claim" means a Claim, other than an Administrative Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code.

"Patriot/Pine Claim" means any Claim asserted by Patriot Capital III, LP, Patriot Capital III SBIC, L.P., Pine Street Capital, Hudson River Co-Investment Fund, LP, or any of their subsidiaries or affiliates.

"PBGC Claim" means any Claim asserted by the Pension Benefit Guaranty Corporation.

"Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity.

3278801.4

"Petition Date" means February 28, 2018.

"Plan" means this chapter 11 plan for the Debtor as herein proposed, including all supplements, appendices and schedules thereto, either in its present form or as the same may be further altered, amended or modified from time to time in accordance with the Bankruptcy Code.

"Previously Satisfied Claim" means any Claim that has been satisfied or deemed Disallowed prior to the Effective Date pursuant to a Final Order entered by the Bankruptcy Court in the Chapter 11 Case, including, without limitation, the Patriot/Pine Claim, the DANC Claim, and the Village Claim.

"Priority Tax Claim" means a Claim of a governmental unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"Pro Rata" means, with respect to a distribution regarding a particular Class, the proportion that (a) the Face Amount of a Claim in a particular Class bears to (b) the aggregate Face Amount of all Claims in such Class, unless this Plan provides otherwise.

"Professional" means any professional employed in the Chapter 11 Case pursuant to section 327 or 1103 of the Bankruptcy Code.

"Professional Fee Claim" means an Administrative Claim under section 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation or reimbursement of a Professional or other entity for services rendered or expenses incurred on behalf of the Debtor or the Creditors' Committee in the Chapter 11 Case on or prior to the Effective Date.

"Professional Fee Estimate" has the meaning given in Section 10.01.

"Record Date" means the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be _____, 20__.

"Released Party" means, collectively, pursuant to section 1123(b)(3) of the Bankruptcy Code, effective as of the Effective Date, all officers, directors and employees of the Debtor serving as such as of the Petition Date or at any time during the Chapter 11 Case, the members of the Creditors' Committee, and the Professionals.

"Reorganized Debtor" means the Debtor on and after the Effective Date.

"Reorganized Debtor Expenses" means any costs and expenses incurred by the Reorganized Debtor or by the Responsible Person on behalf of the Reorganized Debtor in connection with the consummation of this Plan (including any attorneys' fees or other professionals' fees).

"Reorganized Debtor Reserve" means the Cash reserve established by the Reorganized Debtor from the Assets, to pay Responsible Person Compensation and Reorganized Debtor Expenses under this Plan.

7

"<u>Responsible Person</u>" means Donald Schnackel in his capacity as the sole officer and fiduciary of the Reorganized Debtor responsible for administering the Estate in accordance with this Plan.

"<u>Responsible Person Compensation</u>" means compensation to be paid to the Responsible Person in the amount of $150 per hour, together with reimbursement of reasonable expenses incurred by the Responsible Person in furtherance of this Plan.

"<u>Scheduled</u>" means, with respect to any Claim, the status and amount, if any, of such Claim as set forth in the Schedules.

"<u>Schedules</u>" means the schedules of assets and liabilities and the statements of financial affairs Filed by the Debtor in the Chapter 11 Case, as such schedules have been or may be further modified, amended or supplemented in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

"<u>Secured Claim</u>" means a Claim that is secured by a Lien on Collateral or that is subject to setoff under section 553 of the Bankruptcy Code, but only to the extent of the value of the Claim Holder's Collateral or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

"<u>Subsequent Distribution</u>" means any distribution after the Initial Distribution.

"<u>Subsequent Distribution Date</u>" means the date upon which the Responsible Person determines, in accordance with this Plan, to conduct a Subsequent Distribution.

"<u>Unimpaired Claim</u>" means a Claim that is not Impaired under this Plan.

"<u>Village Claim</u>" means any Claim asserted by the Village of West Carthage.

Section 1.02   <u>Rules of Interpretation</u>.   For purposes of this Plan, unless otherwise provided herein:  (a) whenever it appears appropriate for the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or schedule Filed or to be Filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) all references in this Plan to Sections and Articles are references to Sections and Articles of this Plan; (f) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, instrument, release or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code

8

and Bankruptcy Rules; and (i) the rules of construction set forth in section 102 of the Bankruptcy Code will apply.

Section 1.03   <u>Computation of Time</u>.  In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided for, the provisions of Bankruptcy Rule 9006(a) shall apply.

**ARTICLE II**
**ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS**

Section 2.01   <u>Administrative Claims</u>.  On, or as soon as reasonably practicable after, the later of (a) the Effective Date, or (b) the date on which an Administrative Claim becomes an Allowed Administrative Claim, each Holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Allowed Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other less favorable treatment as to which the Debtor or the Reorganized Debtor and the Holder of such Allowed Administrative Claim shall have agreed upon in writing.

Section 2.02   <u>Priority Tax Claims</u>.  On, or as soon as reasonably practicable after, the later of (a) the Effective Date, or (b) the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive in full satisfaction, settlement and release of, and in exchange for, such Allowed Priority Tax Claim, (i) Cash equal to the amount of such Allowed Priority Tax Claim, or (ii) such other less favorable treatment as to which the Debtor or the Reorganized Debtor and the Holder of such Allowed Priority Tax Claim shall have agreed upon in writing; provided, however, that any Priority Tax Claim that is not an Allowed Claim, or any Allowed Priority Tax Claim not due and owing on the Effective Date, will be paid in accordance with this Section 2.02 only when such Claim becomes Allowed and due and owing; and provided further, that any Claim or demand for payment of a penalty (other than a penalty of the type specified in section 507(a)(8)(G) of the Bankruptcy Code) shall be a Disallowed Claim pursuant to the Plan, and the Holder of an Allowed Priority Tax Claim shall not be allowed to assess or attempt to collect such penalty from the Debtor or its Estate.

**ARTICLE III**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

Section 3.01   <u>Generally</u>.  Set forth below is a designation of classes of Claims against and Interests in the Debtor.  All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and their treatment is set forth in Article II above.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of voting on, and receiving distributions pursuant to, this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

9

Section 3.02    Unimpaired Classes. The Plan classifies the following Unimpaired Claims that are not entitled to vote on this Plan. Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of a Claim in the following Classes is conclusively presumed to have accepted this Plan in respect of such Claims. Accordingly, Holders of Claims in such Classes are not entitled to vote to accept or reject this Plan and the votes of such Holders are not being solicited in connection with this Plan. Such Claims against the Debtor are classified as follows:

(a)    Class 1 shall consist of all Non-Tax Priority Claims ("Class 1 Claims" or "Class 1 Non-Tax Priority Claims").

(b)    Class 2 shall consist of all Miscellaneous Secured Claims ("Class 2 Claims" or "Class 2 Miscellaneous Secured Claims")

Section 3.03    Impaired Classes Entitled to Vote. This Plan classifies the following Impaired Claims that shall receive a distribution under this Plan that are entitled to vote to accept or reject this Plan:

(a)    Class 3 shall consist of all KeyBank Claims ("Class 3 Claims" or "Class 3 KeyBank Claims")

(b)    Class 4 shall consist of all General Unsecured Claims ("Class 4 Claims" or "Class 4 General Unsecured Claims").

Section 3.04    Impaired Classes Not Entitled to Vote. This Plan classifies the following Impaired Claims and Impaired Interests that are not entitled to vote on this Plan. Pursuant to section 1126(g) of the Bankruptcy Code, each Holder of a Claim or Interest in the following Classes is conclusively presumed to have rejected this Plan in respect of such Claims or Interests. Accordingly, such Holders of Claims or Interests are not entitled to vote to accept or reject this Plan and the votes of such Holders are not being solicited in connection with this Plan. Such Claims against and Interests in the Debtor are classified as follows:

(a)    Class 5 shall consist of all Interests of Holders of equity Interests ("Class 5 Interests" or "Class 5 Equity Interests").

## ARTICLE IV
## PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS

Section 4.01    Class 1 Non-Tax Priority Claims. Class 1 Non-Tax Priority Claims are Unimpaired Claims. To the extent that these Claims have not already been paid pursuant to a prior order of the Bankruptcy Court, each Holder of an Allowed Class 1 Non-Tax Priority Claim shall receive in full satisfaction, settlement, release and extinguishment of such Claim: (a) the amount of such unpaid Allowed Claim in Cash on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Class 1 Claim becomes Allowed, and (iii) a date agreed to by the Debtor or the Reorganized Debtor and the Holder of such Class 1 Claim; (b) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Claim and the Debtor or the Reorganized Debtor that are no less favorable to the Debtor or the Reorganized Debtor than as described in clause (a) above; or (c) as the Bankruptcy Court may order.

10

Section 4.02   Class 2 Miscellaneous Secured Claims.   Class 2 Miscellaneous Secured Claims are Unimpaired Claims.   To the extent that these Claims have not already been paid pursuant to a prior order of the Bankruptcy Court, each Holder of an Allowed Class 2 Miscellaneous Secured Claim shall receive in full satisfaction, settlement, release and extinguishment of such Claim:   (a) a return of the Collateral securing such Claim or, at the Debtor's election, the amount of such unpaid Allowed Claim in Cash, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Class 2 Claim becomes Allowed, and (iii) a date agreed to by the Debtor or the Reorganized Debtor and the Holder of such Class 2 Claim; (b) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Claim and the Debtor or the Reorganized Debtor that are no less favorable to the Debtor or the Reorganized Debtor than as described in clause (a) above; or (c) as the Bankruptcy Court may order.

Section 4.03   Class 3 KeyBank Claims.  Class 3 KeyBank Claims are Impaired.  On the Initial Distribution Date, or as soon thereafter as is reasonably practicable, and on one or more Subsequent Distribution Dates, if any, the Reorganized Debtor shall, in full satisfaction, settlement and release of, and in exchange for all Allowed KeyBank Claims which have not been paid or satisfied by prior Bankruptcy Court order, distribute to the Holder of the Allowed KeyBank Claim all Net Proceeds of the Assets transferred into the KeyBank Residual Claims Fund.

Section 4.04   Class 4 General Unsecured Claims.   Class 4 General Unsecured Claims are Impaired.  On the Initial Distribution Date, or as soon thereafter as is reasonably practicable, and on one or more Subsequent Distribution Dates, if any, the Reorganized Debtor shall, in full satisfaction, settlement and release of, and in exchange for each and every Allowed Class 4 Claim, distribute Pro Rata to or for the benefit of Holders of Allowed Class 4 Claims, the ratable portion of the Net Proceeds of the Assets to be transferred into the General Unsecured Claims Fund pursuant to the terms of Article XIII of this Plan.

Section 4.05   Class 5 Equity Interests.  Class 5 Equity Interests are Impaired.  On the Effective Date, the Class 5 Equity Interests will be cancelled and the Holders of such Interests shall not receive or retain any property or distribution on account of such Class 5 Interests.

Section 4.06   Special Provision Regarding Unimpaired Claims.  Except as otherwise provided in this Plan, nothing shall affect the Debtor's rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to, setoffs or recoupments against, Unimpaired Claims.

## ARTICLE V
## ACCEPTANCE OR REJECTION OF THE PLAN

Section 5.01   Classes Entitled to Vote.  Subject to Sections 5.03 and 5.04 of this Plan, Claim Holders in Impaired Classes of Claims are entitled to vote as a class to accept or reject this Plan.

Section 5.02   Acceptance by an Impaired Class of Claims or Interest.  In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted this Plan if this Plan is

11

accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

Section 5.03    Presumed Acceptances by Unimpaired Classes.  Class 1 Claims and Class 2 Claims are Unimpaired Claims under this Plan.  Pursuant to section 1126(f) of the Bankruptcy Code, Holders of Class 1 Claims and Class 2 Claims are conclusively presumed to accept this Plan, and the votes of such Holders will not be solicited.

Section 5.04    Classes Deemed to Reject Plan.  Class 5 Interests are not entitled to receive any property under this Plan.  Pursuant to section 1126(g) of the Bankruptcy Code, Holders of Claims and Interests in these Classes are deemed to reject this Plan and their votes will not be solicited.

Section 5.05    Summary of Classes Voting on the Plan.  As a result of the provisions of Sections 5.01, 5.03 and 5.04 of this Plan, the votes of Holders of Class 3 Claims and Class 4 Claims will be solicited with respect to this Plan.

Section 5.06    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.  To the extent that any Impaired Class entitled to vote rejects this Plan or is deemed to have rejected this Plan, the Debtor will request confirmation of this Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

Section 6.01    Vesting of Assets.  On the Effective Date, all Assets shall vest in the Reorganized Debtor without further action or Bankruptcy Court order.  In furtherance of the implementation of this Plan, the bank accounts of the Debtor shall be deemed accounts of the Reorganized Debtor, with the sole authority to make deposits to and transfers from such accounts vesting in the Responsible Person or his designee.

Section 6.02    Responsible Person to Effectuate Distributions.  On the Effective Date, the Responsible Person shall be deemed to have been appointed as the Reorganized Debtor's sole officer and representative by the Bankruptcy Court pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.  The Responsible Person shall be appointed for the sole purpose of liquidating and distributing the remaining Assets and with no objective to continue or engage in the conduct of a trade or business.  In accordance with this Plan, the Responsible Person shall cause the Reorganized Debtor to (i) establish and fund the Administrative/Priority Claims Reserve; (ii) pay to each Holder of an Allowed Administrative Claim, Allowed Priority Tax Claim, Allowed Class 1 Non-Tax Priority Claim, and Allowed Class 2 Miscellaneous Secured Claim, the full unpaid amount of each such Allowed Claim; (iii) establish and fund the Reorganized Debtor Reserve; (iv) pay the Reorganized Debtor Expenses and Responsible Person Compensation; (v) liquidate the remaining Assets, (vi) fund the KeyBank Residual Claims Fund and from time to time distribute any Cash therein to the Holder of the Allowed KeyBank Claim; and (vii) fund the General Unsecured Claims Fund and from time to time distribute any Cash therein to the Holders of Allowed Class 4 General Unsecured Claims, all in accordance with the terms and provisions of this Plan.

12

Section 6.03    <u>Preservation of Litigation Claims</u>.  Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Responsible Person, acting on behalf of the Reorganized Debtor, shall have the exclusive right, but not the obligation, to investigate, institute, prosecute, abandon, settle or compromise any Litigation Claims, in his sole discretion and without further order of the Bankruptcy Court in any court or other tribunal, including, without limitation, in an adversary proceeding Filed in the Chapter 11 Case.

Section 6.04    <u>Corporate Authority</u>.  All actions and transactions contemplated under the Plan shall be authorized upon confirmation of the Plan without the need for further approvals, notices, or meetings of the Debtor's board of directors or Interest Holders, other than the notice provided by serving the Plan or notices of the entry of the Confirmation Order and of the Effective Date of the Plan on (i) all known Holders of Claims and (ii) all current directors of the Debtor.  The Confirmation Order shall include provisions dispensing with the need for further approvals, notices, or meetings of any of the Debtor's board of directors or Interest Holders and authorizing and directing any officer of the Debtor to execute any document, certificate, or agreement necessary to effectuate the Plan on behalf of the Debtor, which documents, certificates, and agreements shall be binding on the Debtor and all Holders of Claims.  From and after the Effective Date, the Responsible Person is vested with authority to take any action contemplated by this Plan on behalf of the Debtor and Reorganized Debtor that would otherwise require the approval of shareholders, directors, or officers of the Debtor or Reorganized Debtor. From and after the Effective Date, the authority, power and incumbency of the Persons then acting as directors and/or officers of the Debtor (other than the Responsible Person) shall be terminated and such directors and/or officers shall be deemed to have resigned and have no further duties or responsibilities with respect to the Debtor.

Section 6.05    <u>Retention of Professionals</u>.  The Reorganized Debtor may retain and compensate attorneys and other professionals to assist the Responsible Person in performing his duties on such terms (including on a contingency or hourly basis) as the Responsible Person deems reasonable and appropriate without Bankruptcy Court approval.  The payment of the reasonable fees and expenses of the Reorganized Debtor's retained professionals shall be made in the ordinary course of business from the Reorganized Debtor Reserve and shall not be subject to the approval of the Bankruptcy Court.  Persons previously retained as Professionals for the Debtor in the Chapter 11 Case shall be eligible for retention by the Reorganized Debtor and any such retention shall not be deemed to render such Persons not "disinterested persons" within the meaning of section 101(14) of the Bankruptcy Code for purposes of this Chapter 11 Case.

Section 6.06    <u>Compensation of the Responsible Person</u>.  The Responsible Person shall be entitled to payment of the Responsible Person Compensation out of the Reorganized Debtor Reserve.

Section 6.07    <u>Liability</u>.  The Responsible Person shall not be liable for any act or omission taken or omitted to be taken in his capacity as the Responsible Person, other than acts or omissions resulting from the Responsible Person's willful misconduct, gross negligence or fraud.

Section 6.08    <u>Term of Injunctions or Stays</u>.  Unless otherwise provided herein, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the

13

3278801.4

Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect notwithstanding the confirmation of the Plan, the occurrence of the Effective Date, the dissolution of the Reorganized Debtor, the dismissal or conversion of the Chapter 11 Case to a case under a different chapter of title 11 or the entry of a Final Decree.

Section 6.09    Books and Records.    As part of the appointment of the Responsible Person, to the extent not in the Debtor's possession on the Effective Date, the Reorganized Debtor shall be granted access to those Books and Records selected by the Responsible Person, including any Books and Records the Responsible Person deems necessary to prosecute the Litigation Claims, to reconcile Disputed Claims, or to enable the Responsible Person to execute his duties as specified in the Plan.    Any Person in possession of such Books and Records shall make such Books and Records available to the Responsible Person (or any Professionals retained by the Reorganized Debtor) in whatever form, manner or media, including, without limitation, the specific provision and presentation of all passcodes for security systems and computers, keys, keycards, and notice letters or other correspondence with landlords, warehousemen, account debtors or other relevant parties.    Upon the entry of a Final Decree, the Reorganized Debtor may abandon all Books and Records in its possession.    Pursuant to section 554 of the Bankruptcy Code, this Section 6.09 shall constitute notice and notice, so that no further notice or Bankruptcy Court Filings are required to effectuate the aforementioned abandonment of the Books and Records and entry of the Confirmation Order shall be deemed approval thereof.

Section 6.10    Dissolution of Creditors' Committee.    The Creditors' Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code.    On the Effective Date, the Creditors' Committee shall be dissolved and its members shall be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 Case or this Plan and its implementation, and the retention or employment of any attorneys, accountants, financial advisors, and other agents of the Creditors' Committee shall terminate.

Section 6.11    Cancellation of Existing Securities.    Except as otherwise provided in this Plan and in any contract, instrument or other agreement or document created in connection with this Plan, on the Effective Date, all promissory notes, share certificates (including treasury stock), other instruments evidencing any Claims or Interests, and all options, warrants, calls, rights, puts, awards, commitments or any other agreements of any character to acquire such Claims or Interests shall be deemed canceled and of no further force and effect, without any further act or action under any applicable agreement, law, regulation, order or rule, and the obligations of the Debtor under any such notes, share certificates and other agreements and instruments governing such Claims and Interests shall be discharged.    The Holders of or parties to such canceled notes, share certificates and other agreements and instruments shall have no rights arising from or relating to such notes, share certificates and other agreements and instruments or the cancellation thereof, except the rights provided pursuant to this Plan.

Section 6.12    Closing of Chapter 11 Case.    When all Claims Filed or asserted against the Debtor have become Allowed Claims or have been Disallowed, and all remaining Assets of the Debtor have been liquidated and converted into Cash, and such Cash has been distributed in accordance with this Plan, or at such earlier time as the Responsible Person deems appropriate, the Responsible Person shall move the Bankruptcy Court for the entry of a Final Decree or an

14

order dismissing the Chapter 11 Case or converting it to a case under a different chapter of title 11 in accordance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

Section 6.13    Winding up of the Reorganized Debtor.    Following the Final Distribution and the entry of a Final Decree, the Responsible Person may, in his discretion, take any and all steps deemed necessary to wind up the affairs of the Reorganized Debtor, including, without limitation, completing and filing final tax returns and filing a certificate of dissolution with the Secretary of State for the State of New York.    The filing of the Reorganized Debtor's final tax returns and certificate of dissolution by the Responsible Person shall be authorized and approved in all respects without further action under applicable law, regulation, order or rule, including, without limitation, any action by the stockholders or the directors of the Debtor.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Section 7.01    Rejection of Contracts.    Except as otherwise provided in this Article VII, pursuant to sections 365 and 1123(b) of the Bankruptcy Code, all prepetition executory contracts and unexpired leases that exist between the Debtor and any Person shall be deemed rejected by the Debtor effective as of the Effective Date subject to the occurrence of the Effective Date, except for executory contracts and unexpired leases which:

> (a)    have been assumed and assigned, or rejected (including rejection with a delayed effective date), as applicable, pursuant to an order of the Bankruptcy Court entered prior to the Effective Date; or

> (b)    as of the Effective Date, are subject to a pending motion for approval of the assumption, assumption and assignment, or rejection, as applicable.

Section 7.02    Rejection Damages Bar Date.    If the rejection by the Debtor of an executory contract or unexpired lease pursuant to the Plan results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor or its Estate unless a proof of claim is Filed with the Bankruptcy Court and served upon counsel to the Debtor within thirty (30) days after service of the later of (a) notice of the Effective Date or (b) other notice that the executory contract or unexpired lease has been rejected.    Nothing in this Section 7.02 shall revive a previously Disallowed Claim or extend a previously established rejection damages Bar Date, if applicable.    The Bar Date for Filing a Claim with respect to an executory contract or unexpired lease other than for damages arising from rejection pursuant to this Plan shall be as set forth in the Bar Date Notice or any Bar Date Order applicable to such executory contract or unexpired lease.

## ARTICLE VIII
## PROVISIONS GOVERNING DISTRIBUTIONS

Section 8.01    Disbursing Agent.    The Responsible Person shall make all distributions required under this Plan from the Net Proceeds of the Assets vested in the Reorganized Debtor.

15

Section 8.02    Effective Date Payments and Funding.  On the Effective Date or as soon as practicable thereafter, after the payment of all Allowed Claims which are payable on the Effective Date in accordance with the terms of this Plan, the Reorganized Debtor shall:

(a)    fund the Administrative/Priority Claims Reserve (i) in an amount sufficient to pay all Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims and Miscellaneous Secured Claims which have been Filed or otherwise asserted prior to any applicable Bar Date and which have not been Disallowed plus (ii) such additional amount as in the Responsible Person's business judgment may be necessary to pay any additional Administrative Claims that may have been incurred by the Debtor and which are not, as of the Effective Date, subject to a Bar Date which has expired;

(b)    fund the Reorganized Debtor Reserve in an amount sufficient in the Responsible Person's business judgment to pay the estimated amount of the Reorganized Debtor Expenses and the estimated amount of the Responsible Person Compensation;

(c)    deposit $730,000 into the General Unsecured Claims Fund; and

(d)    deposit all remaining Cash in the Reorganized Debtors' possession into the KeyBank Residual Claims Fund.

Section 8.03    Subsequent Funding.  Any Assets which are not paid or allocated pursuant to Section 8.02 shall, following their liquidation to Cash and from time to time as determined by the Responsible Person in his business judgment, be allocated or deposited as follows:

(a)    first, to the Administrative/Priority Claims Reserve to the extent the amount therein is, in the Responsible Person's business judgment, not sufficient to pay (i) all Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims and Miscellaneous Secured Claims which have been Filed or otherwise asserted prior to any applicable Bar Date and which have not been Disallowed plus (ii) such additional amount as in the Responsible Person's business judgment may be necessary to pay any additional Administrative Claims that may have been incurred by the Debtor and which are not, as of the date of such allocation, subject to a Bar Date which has expired;

(b)    second, to the Reorganized Debtor Reserve to the extent the amount therein is, in the Responsible Person's business judgment, not sufficient to pay the estimated amount of the Reorganized Debtor Expenses and the estimated amount of the Responsible Person Compensation; and

(c)    third, to the KeyBank Residual Claims Fund, *except that* (i) the first $140,000 of any recovery from the Environmental Escrow and fifty percent (50%) of any recovery from the Environmental Escrow in excess of $140,000 and (ii) any recovery from any escrows, refunds, rebates, deposits or other similar items (other than the Environmental Escrow) up to a maximum of $500,000, shall instead be deposited in the General Unsecured Claims Fund.

16

Section 8.04    <u>Reversion to KeyBank Residual Claims Fund</u>.

(a)    Once all timely-Filed Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims and Miscellaneous Secured Claims have been either Allowed or Disallowed and upon payment by the Reorganized Debtor of all Allowed Priority Tax Claims, Allowed Non-Tax Priority Claims, Allowed Miscellaneous Secured Claims and Allowed Administrative Claims pursuant to this Plan, the Administrative/Priority Claims Reserve shall be released and any Cash remaining therein shall be deposited into the KeyBank Residual Claims Fund.

(b)    Upon the determination by the Responsible Person that adequate provisions have been made for the payment of all Responsible Person Compensation and Reorganized Debtor Expenses, the Reorganized Debtor Reserve shall be released and any Cash remaining therein (beyond that which is necessary for the payment of Responsible Person Compensation and Reorganized Debtor Expenses) shall be deposited into the KeyBank Residual Claims Fund.

Section 8.05    <u>Initial Distribution</u>.  On the Initial Distribution Date or as soon thereafter as is reasonably practicable, the Reorganized Debtor shall distribute (a) the Cash then in the KeyBank Residual Claims Fund to the Holder of the Allowed Class 3 Claim and (b) the Cash then in the General Unsecured Claims Fund (except for Cash held in the Disputed Claims Reserve) Pro Rata to the Holders of Allowed Class 4 Claims.

Section 8.06    <u>Subsequent Distributions</u>.  The Responsible Person shall determine, in accordance with this Plan, whether to make one or more Subsequent Distributions based on the amount of Cash available in the KeyBank Residual Claims Fund and/or General Unsecured Claims Fund from time to time (without taking into account any Cash held in the Disputed Claims Reserve).

Section 8.07    <u>Final Distribution</u>.  Once (a) all Disputed Claims have been either Allowed or Disallowed, (b) the Responsible Person has resolved or abandoned all Litigation Claims and otherwise liquidated all available Assets, (c) all Allowed Priority Tax Claims, Allowed Non-Tax Priority Claims, Miscellaneous Secured Claims and Allowed Administrative Claims have been paid and (d) the Reorganized Debtor has paid or made arrangements for the payment of all Responsible Person Compensation and Reorganized Debtor Expenses, the Reorganized Debtor shall make a final distribution (the "<u>Final Distribution</u>") (i) of the funds in the KeyBank Residual Claims Fund, to the Holder of the Allowed KeyBank Claim and (ii) of the funds in the General Unsecured Claims Fund, Pro Rata to Holders of Allowed Class 4 General Unsecured Claims.

Section 8.08    <u>No Payments of Fractional Dollars</u>.  Notwithstanding any other provisions of this Plan to the contrary, the Reorganized Debtor shall not be required to make any payment of fractional dollars.  Whenever any payment of a fraction of a dollar under this Plan would otherwise be required, the actual distribution made by the Reorganized Debtor may reflect a rounding of such fraction to the nearest whole dollar.

Section 8.09    <u>De Minimis Distributions; Charitable Donation</u>.  Notwithstanding any other provision of this Plan, the Reorganized Debtor shall have no obligation to make a

17

distribution on account of an Allowed Claim or account to a specific Holder of an Allowed Claim until and unless the aggregate amount to be distributed to that Holder as part of the Initial Distribution, any Subsequent Distribution, and/or the Final Distribution is at least $25.00 as the cost of making smaller distributions likely would exceed the dollar amount of such distribution. If, in the reasonable judgment of the Responsible Person, the cost of calculating and making a Final Distribution to Holders of Class 4 Claims pursuant to Section 8.07 would be excessive in relation to the benefits to the Holders of such Class 4 Claims who would otherwise be entitled to such distribution, the Reorganized Debtor may instead make a charitable donation of the funds remaining in the General Unsecured Claims Fund provided that such charitable donation is made to an entity that is exempt from taxation under 26 U.S.C. § 501(c)(3).

Section 8.10    Interest on Claims.    Unless otherwise specifically provided for in this Plan, the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Claim Holder shall be entitled to interest accruing on or after the Petition Date on any Claim.    To the extent otherwise provided for in this Plan, the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall accrue on Claims at the applicable non-default rate.    Unless otherwise specifically provided for in this Plan, the Confirmation Order, or required by applicable bankruptcy law, interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

Section 8.11    Delivery of Distributions and Undeliverable or Unclaimed Distributions.

(a)    Distributions to Holders of Allowed Claims shall be made by the Reorganized Debtor (i) at the addresses set forth on the proofs of claim Filed by such Claim Holders (or at the address set forth in any applicable notice of assignment of claim or notice of change of address), (ii) at the addresses set forth in any written notices of address changes delivered to the Debtor or to the Reorganized Debtor after the date of any related proof of claim or (iii) at the addresses reflected in the Schedules if no proof of claim has been Filed and the Debtor and the Reorganized Debtor have not received a written notice of a change of address.

(b)    If any Claim Holder's distribution is returned to the Reorganized Debtor as undeliverable, no further distributions to such Claim Holder shall be made unless and until the Reorganized Debtor is notified of such Claim Holder's then current address.    All requests for undeliverable distributions shall be made by the Claim Holder to the Reorganized Debtor no later than the latter of (i) ninety (90) days from the date of the relevant distribution or (ii) ninety (90) days from the date the relevant Claim becomes an Allowed Claim.    Upon receipt of a timely request for an undeliverable distribution, the Reorganized Debtor shall make such distribution to the address specified by the Claim Holder promptly and without interest.    Any property relating to distributions returned as undeliverable and not claimed within the time set forth in this Section 8.11(b) shall revert to the General Unsecured Claim Fund, free of any restrictions thereon or Claims of such Holder and notwithstanding any federal or state escheat laws to the contrary and the

18

Reorganized Debtor shall have no obligation to reissue such distribution. Nothing contained in the Plan shall require the Reorganized Debtor or the Responsible Person to attempt to locate any Holder of an Allowed Claim.

(c)    The Reorganized Debtor shall be authorized to stop payment on any distribution check which is not presented for payment within ninety (90) days of the date the Debtor deposited such check in the mail addressed to the Claim Holder as set forth in Section 8.11(a) above. Any funds relating to distribution checks with respect to which the Reorganized Debtor has initiated a stop payment as set forth in this Section 8.11(c) shall revert to the General Unsecured Claim Fund, free of any restrictions thereon or Claims of such Holder and notwithstanding any federal or state escheat laws to the contrary and the Reorganized Debtor shall have no obligation to reissue such distribution.

Section 8.12  Record Date for Distributions.  The Reorganized Debtor and the Responsible Person shall have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim or Interest that occurs after the Record Date, and will be entitled for all purposes herein to recognize and make distributions only to those Holders of Allowed Claims who are Holders of such Claims as set forth on the Bankruptcy Court's official claims register or official transfer ledger, as the case may be, as of the Record Date.

Section 8.13  Allocation of Plan Distributions Between Principal and Interest.  To the extent that any Allowed Claim entitled to a distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

Section 8.14  Means of Cash Payment.  Payments of Cash made pursuant to this Plan shall be in U.S. dollars and shall be made, at the option and in the discretion of the Responsible Person, by (a) checks drawn on or (b) wire transfer from a domestic bank selected by the Responsible Person, as applicable.

Section 8.15  Setoffs.  The Debtor or the Reorganized Debtor may, but shall not be required to, set off against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtor or the Reorganized Debtor may have against the Holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim against such Holder.

Section 8.16  Release of Liens.  Except as otherwise provided in this Plan or in any contract, instrument, release or other agreement or document created or assumed in connection with this Plan, on the Effective Date and concurrently with the Initial Distributions made pursuant to this Plan, all mortgages, deeds of trust, Liens, pledges or other security interests against the property of the Debtor's Estate shall be fully released and discharged, and all of the right, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other Collateral or security interests shall revert to the Debtor's Estate and its successors and assigns,

19

provided, however, that any liens or security interests in favor of KeyBank shall continue to attach to any relevant Collateral for so long as such Collateral remains in the Reorganized Debtor's possession or control and shall be released in accordance with the foregoing only to the extent such property is distributed or used in accordance with the terms of this Plan.  To the extent that any termination statements, instruments of satisfaction, or other similar releases of interests necessary to terminate or otherwise remove from title or record any filed financing statements, mortgages, or other documents or agreements evidencing a security interest in the Debtor's Assets shall not have been delivered to the Debtor in proper form for filing and executed by the appropriate parties prior to, or in connection with, the satisfaction of any Secured Claims, then the Responsible Person is hereby authorized to (a) execute and file such statements, instruments, releases or other documents on behalf of the Holder of such Secured Claim with respect to the encumbered Assets and (b) to file, register, or otherwise record a certified copy of the Confirmation Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all security interests in the Debtor's Assets of any kind or nature whatsoever.

## ARTICLE IX
## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT
## AND UNLIQUIDATED CLAIMS

Section 9.01    Objection Deadline; Prosecution of Objections.  The Responsible Person, on behalf of the Reorganized Debtor, shall retain responsibility for administering, disputing, objecting to, compromising or otherwise resolving and making distributions on account of the respective Claims against the Debtor.  No later than the Claims Objection Deadline (unless extended by an order of the Bankruptcy Court), the Responsible Person shall File objections to Claims with the Bankruptcy Court and serve such objections upon the Holders of each of the Claims to which objections are made.  Moreover, notwithstanding the expiration of the Claims Objection Deadline, the Responsible Person shall continue to have the right to amend any objections and to File and prosecute supplemental objections and counterclaims to a Disputed Claim until such Disputed Claim is Allowed.  In accordance with Article VI of this Plan, the Responsible Person shall be authorized to, and shall, resolve all Disputed Claims by withdrawing or settling such objections thereto, or by litigating to judgment in the Bankruptcy Court or such other court having jurisdiction on the validity, nature and/or amount thereof.  On motion to the Bankruptcy Court, the Claims Objections Deadline may be extended.

Section 9.02    No Distributions Pending Allowance.    Notwithstanding any other provision of this Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim and the remainder has become a Disallowed Claim; provided, however, that Professional Fee Claims shall be governed by Article X below.

Section 9.03    Disputed Claims Reserve.  Until such time as all Disputed Claims are either Allowed or Disallowed, the Reorganized Debtor shall withhold the Disputed Claims Reserve from any amounts deposited into the General Unsecured Claims Fund.  The Disputed Claims Reserve shall be equal to the cumulative amount of all Cash deposited into the General Unsecured Claims Fund (without reduction for any distributions made pursuant to this Plan)

multiplied by the quotient obtained by dividing the aggregate Face Amount of all Disputed Claims by the aggregate Face Amount of all Class 4 General Unsecured Claims (other than Disallowed Class 4 Claims).   The Disputed Claims Reserve shall be supplemented, as appropriate, from time to time to the extent additional Cash is deposited into the General Unsecured Claims Fund following the Effective Date pursuant to Section 8.03 and shall be reduced, as appropriate, from time to time to the extent Disputed Claims are Disallowed or are Allowed and paid pursuant to Section 9.04.

Section 9.04   Distributions After Allowance.    Payments and distributions from the Disputed Claims Reserve shall be made as appropriate to the Holder of any Disputed Claim that has become an Allowed Claim, on the first Subsequent Distribution Date after the date such Disputed Claim becomes an Allowed Claim.   Such distributions shall be in the amount of the cumulative distributions that would have been made to the Holder of such Claim under the Plan if the Disputed Claim had been Allowed on the Effective Date (provided, however, that nothing in this Plan or the Disclosure Statement shall be deemed to entitle the Holder of a Disputed Claim to interest on such Claim).

Section 9.05   Reversion to General Unsecured Claim Fund.   Once all Disputed Claims have been determined to be either Allowed Claims or Disallowed Claims, any amounts remaining in the Disputed Claims Reserve shall be added to the General Unsecured Claim Fund and distributed Pro Rata to all Holders of Allowed Class 4 Claims in accordance with the provisions of Articles IV and VIII of this Plan.

### ARTICLE X
### ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

Section 10.01   Professional Fee Claims.

(a)     On the Effective Date, the Debtor shall pay all amounts owing to Professionals for all Professional Fee Claims allowed by the Bankruptcy Court on or prior to the Effective Date; provided, however, that Professionals shall continue to prepare and submit fee applications for all Professional Fee Claims incurred through the Effective Date.   No later than ten (10) Business Days prior to the Confirmation Hearing, each Professional shall File a statement (each, a "Professional Fee Statement") that includes an estimate of Professional Fee Claims incurred or anticipated to be incurred prior to the Effective Date which have not been previously allowed by the Bankruptcy Court (each, a "Professional Fee Estimate") together with those Professional Fee Claims, if any, which were allowed by the Bankruptcy Court pursuant to a prior fee application but which have not as of that date been paid.   Parties in interest shall have until 12:00 noon on the date which is three (3) Business Days prior to the Confirmation Hearing to object to any Professional Fee Estimate and any such objection shall be heard at the Confirmation Hearing; provided that failure to object to any Professional Fee Estimate shall not bar subsequent objection to allowance of any Professional Fee Claim asserted in a later fee application.   On the Effective Date, the Reorganized Debtor shall include within the Administrative/Priority Claims Reserve funds equal to the aggregate amount of all timely Filed Professional Fee Statements,

3278801.4

less any amounts which are paid by the Reorganized Debtor to Professionals on the Effective Date pursuant to the first sentence of this Section 10.01(a).  Such funds shall be used by the Reorganized Debtor to pay the remaining Professional Fee Claims owing to Professionals as and when Allowed by the Bankruptcy Court.

(b)      All Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered on or before the Effective Date (including compensation and expenses for making a substantial contribution in any of the Chapter 11 Case) shall File and serve such applications on counsel for the Debtor, the United States Trustee and as otherwise required by the Bankruptcy Court and the Bankruptcy Code, an application for final allowance of compensation and reimbursement of expenses no later than sixty (60) days after the Effective Date.  Objections to applications of Professionals and other entities for compensation and reimbursement of expenses must be Filed with the Bankruptcy Court no later than twenty (20) days after the Filing and service of the relevant application.  The Reorganized Debtor shall pay, from the Administrative/Priority Claims Reserve, all compensation and reimbursement of expenses allowed by the Bankruptcy Court within ten (10) Business Days following the entry of an order allowing such fees and expenses, or as soon thereafter as practicable.

Section 10.02 Other Administrative Claims.    All requests for payment of an Administrative Claim (other than Professional Fee Claims or Administrative Claims which are subject to an earlier Bar Date pursuant to a Bar Date Order), must be Filed no later than the Administrative Claims Bar Date.  Unless the Debtor or the Reorganized Debtor objects to an Administrative Claim within one hundred twenty (120) days after the Administrative Claims Bar Date, such Administrative Claim shall be deemed Allowed in the amount requested.  In the event that the Debtor or the Reorganized Debtor objects to an Administrative Claim and the objector and such claimant are unable to resolve their dispute consensually, then the objector shall File a motion for determination of such Administrative Claim and the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.  Notwithstanding the foregoing, the Debtor or the Reorganized Debtor may pay any undisputed Administrative Claim as to which no request for payment has been Filed but which is paid or payable by the Debtor in the ordinary course of business.

## ARTICLE XI
## CONFIRMATION AND CONSUMMATION OF THE PLAN

Section 11.01 Conditions to Confirmation.  The following are conditions precedent to confirmation of the Plan that may be satisfied or waived in accordance with Section 11.03 of the Plan:

(a)      The Bankruptcy Court shall have approved by Final Order a Disclosure Statement with respect to the Plan in form and substance reasonably acceptable to the Debtor.

22

(b)    The Confirmation Order shall be in form and substance reasonably acceptable to the Debtor.

Section 11.02  <u>Conditions to Effective Date</u>.  The following are conditions precedent to the occurrence of the Effective Date:

(a)    The Confirmation Order shall be in form and substance acceptable to the Debtor and shall have been entered by the Bankruptcy Court and shall be a Final Order, and no request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending.

(b)    The appointment of the Responsible Person shall have been confirmed by entry of the Confirmation Order or other order of the Bankruptcy Court.

(c)    Any order necessary to satisfy any condition to the effectiveness of the Plan shall have become a Final Order and all documents provided for under the Plan shall have been executed and delivered by the parties thereto.

Section 11.03  <u>Waiver of Conditions</u>.  The conditions set forth in <u>Sections 11.01</u> and <u>11.02</u> of this Plan may be waived, in whole or in part, by the Debtor in its sole discretion at any time without notice, leave or order of the Bankruptcy Court and without any formal action other than proceeding to consummate the Plan.

## ARTICLE XII
## EFFECT OF PLAN CONFIRMATION ON CLAIMS AND INTERESTS

Section 12.01  <u>No Discharge of Claims Against Debtor</u>.  Pursuant to section 1141(d)(3) of the Bankruptcy Code, confirmation of this Plan will not discharge Claims against the Debtor; <u>provided</u>, <u>however</u>, that no Holder of a Claim against the Debtor may, on account of such Claim, seek or receive any payment or other distribution from, or seek recourse against, the Reorganized Debtor or its successors or the Estate, except as expressly provided herein.

Section 12.02  <u>Termination of Subordination Rights and Settlement of Related Claims and Controversies</u>.  The classification and manner of satisfying all Claims and Interests under the Plan takes into consideration all subordination rights, arising under section 510 of the Bankruptcy Code, or otherwise.  Except as provided in this Plan, all such subordination rights that a Holder of a Claim or Interest may have with respect to any distribution to be made pursuant to the Plan will be cancelled and terminated, and all actions related to the enforcement of such subordination rights will be permanently enjoined.  Accordingly, distributions pursuant to the Plan to Holders of Allowed Claims will not be subject to payment to a beneficiary of such terminated subordination rights, or to levy, garnishment, attachment or other legal process by a beneficiary of such terminated subordination rights.  Nothing in this <u>Section 12.02</u> shall be deemed to release the rights, if any, that the Debtor, the Reorganized Debtor or any other party in interest may have to seek to equitably subordinate any Claim pursuant to section 510 of the Bankruptcy Code or to otherwise seek to recharacterize any Claim as an equity Interest.

23

Section 12.03 <u>Exculpation and Limitation of Liability</u>.  **The Debtor, the Creditors' Committee, the members of the Creditors' Committee in their representative capacity, and any of such parties' respective present or former members, officers, directors, employees, advisors, counsel, representatives, Professionals or agents, and any of all such parties' predecessors, successors and assigns, and all of their respective officers, directors, agents, employees and attorneys, shall not have or incur, and are hereby released from, any claim, obligation, Cause of Action or liability to one another or to any Holder of any Claim or Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns, for any act or omission in connection with, or arising out of the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for their gross negligence or willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. No Claim Holder or Interest Holder, or other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the Debtor, the Creditors' Committee, the members of the Creditors' Committee in their representative capacity, and any of such parties' respective present or former members, officers, directors, employees, advisors, counsel, representatives, Professionals or agents, and any of such parties' predecessors, successors and assigns, and all of their respective officers, directors, agents, employees and attorneys, for any act or omission in connection with, relating to or arising out of the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for their gross negligence or willful misconduct. Confirmation of the Plan shall release the Debtor's present and former officers, directors, employees, advisors, counsel, representatives, Professionals and agents, and any of all such parties' predecessors, successors and assigns, from any and all claims or Causes of Action that the Debtor, the Estate or creditors might have to seek recovery of, avoidance of, disgorgement of, or clawback of any payments received from the Debtor**.

Section 12.04 <u>Releases by Holders of Claims</u>.  **In consideration of the obligations of the Debtor under the Plan and the Cash and other contracts, instruments, releases, agreements or documents to be delivered in connection with the Plan, on the Effective Date (a) each Person that votes to accept this Plan, and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, all Holders of Claims and Interests and each entity that has held, holds or may hold a Claim or Interest (each Person described in the foregoing (a) or (b), a "<u>Release Obligor</u>") shall have conclusively, absolutely, unconditionally, irrevocably and forever, released each Released Party from any claim or Cause of Action existing as of the Effective Date arising from, based on or relating to, in whole or in part, the subject matter of, or the transaction or event giving rise to, the Claim of such Release Obligor, and any act, omission, occurrence or event in any manner related to such subject matter, transaction or obligation**.

Section 12.05 <u>Injunction</u>.  **The Confirmation Order shall act as a permanent injunction against any Person commencing or continuing any action, employment of**

24

process, or act to collect, offset or recover any Claim, Interest or Cause of Action satisfied or released under this Plan. Subject to the occurrence of the Effective Date and rights in this Plan, the entry of the Confirmation Order shall permanently enjoin all Persons that have held, currently hold or may hold a Claim against or Interest in the Debtor from taking any of the following actions in respect of such Claim or Interest: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against any or all of the Reorganized Debtor, the Responsible Person, the Released Parties or their respective property or Assets; (b) enforcing, levying, attaching, collecting or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, device or order against any or all of the Reorganized Debtor, the Responsible Person, the Released Parties or their respective property or Assets; (c) creating, perfecting or enforcing in any manner, directly or indirectly, any Lien against any or all of the Reorganized Debtor, the Responsible Person, the Released Parties or their respective property or Assets; (d) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any debt, liability or obligation due to the Reorganized Debtor, the Responsible Person, or the Released Parties; and (e) proceeding in any manner in any place whatsoever that does not conform to or comply with or is inconsistent with the provisions of this Plan. All injunctions or stays provided for in the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Case.

Section 12.06 <u>Survival of Certain Litigation Claims</u>. Notwithstanding anything to the contrary set forth in this Plan, the provisions of <u>Sections 12.03</u>, <u>12.04</u>, and <u>12.05</u> shall not apply in any way to exculpate or release any Buyer Related Party from any Litigation Claims which the Debtor or the Reorganized Debtor may have or assert and nothing in this Plan shall be deemed to enjoin or prevent the Debtor or the Reorganized Debtor from bringing any such Litigation Claims against any Buyer Related Party.

## ARTICLE XIII
## RETENTION OF JURISDICTION

Section 13.01 <u>Exclusive Jurisdiction of Bankruptcy Court</u>. Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a) Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

(b) Hear and determine all applications for compensation and reimbursement of expenses of Professionals incurred in the Chapter 11 Case for periods ending on or before the Effective Date under sections 330, 331, 503(b), 1103 and 1129(a)(9) of the Bankruptcy Code;

3278801.4

(c)     Resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(d)     Resolve any matters relating to the pre- and post-confirmation sales of the Debtor's property or Assets;

(e)     Enforce, implement or clarify all orders, judgments, injunctions, and rulings entered by the Bankruptcy Court;

(f)     Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(g)     Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(h)     Enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

(i)     Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of this Plan or any contract, instrument, release or other agreement or document that is executed or created pursuant to this Plan, or any entity's rights arising from or obligations incurred in connection with this Plan or such documents;

(j)     Modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

(k)     Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of this Plan or the Confirmation Order;

(l)     Hear and determine any Litigation Claims and any other Causes of Action by or on behalf of the Debtor or the Estate;

26

3278801.4

(m)     Hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(n)     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or distributions pursuant to this Plan are enjoined or stayed;

(o)     Determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

(p)     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Case;

(q)     Hear and determine all matters related to (i) the property of the Estate from and after the Confirmation Date and (ii) the winding up of the Debtor's affairs;

(r)     Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code;

(s)     Adjudicate any and all Causes of Action, adversary proceedings, applications and contested matters that have been or hereafter are commenced or maintained in or in connection with the Chapter 11 Case or this Plan, including, without limitation, any adversary proceeding or contested matter, proceedings to adjudicate the allowance of Disputed Claims, and all controversies and issues arising from or relating to any of the foregoing;

(t)     Hear and determine all matters involving Claims or Causes of Action involving the Debtor or its property;

(u)     Hear and determine all matters relating to the enforcement and interpretation of Sections 12.03, 12.04, and 12.05 of this Plan; and

(v)     Enter a Final Decree closing the Chapter 11 Case.

Notwithstanding the foregoing, if the Bankruptcy Court is determined not to have, or otherwise declines to exercise jurisdiction with respect to the foregoing, or if the Responsible Person chooses to pursue any Claim or Cause of Action (as applicable) in another court of competent jurisdiction, the Responsible Person will have authority to bring such action in any other court of competent jurisdiction.

## ARTICLE XIV
## MISCELLANEOUS PROVISIONS

Section 14.01  Binding Effect.  This Plan shall be binding upon and inure to the benefit of the Debtor, the Reorganized Debtor, the Creditors' Committee, all present and former Holders of

3278801.4

Claims and Interests, other parties in interest and their respective successors and assigns as of the entry of the Confirmation Order.

Section 14.02 <u>Payment of Statutory Fees</u>.    On the Effective Date or as soon as reasonably practicable thereafter the Reorganized Debtor shall pay all outstanding fees then due and payable pursuant to section 1930 of title 28 of the United States Code. Following the Effective Date the Reorganized Debtor shall continue to pay all such fees as they become due and payable until entry of a Final Decree or the entry of an order dismissing the Chapter 11 Case or converting it to a case under a different chapter of title 11.

Section 14.03 <u>Amendment or Modification of this Plan</u>.  Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, alterations, amendments or modifications of this Plan may be proposed in writing by the Debtor at any time prior to or after the Confirmation Date but prior to the substantial consummation of this Plan.  A Holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Interest of such Holder.

Section 14.04 <u>Revocation, Withdrawal or Non-Consummation</u>.  The Debtor reserves the right to revoke or withdraw this Plan prior to the Effective Date and to File a subsequent chapter 11 plan.  If the Debtor revokes or withdraws this Plan (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases affected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void, and (c) nothing contained in this Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtor or any other Person, or (iii) constitute an admission of any sort by the Debtor or any other Person.

Section 14.05 <u>Effectuating Documents and Further Transactions</u>.    The Debtor (or, following the Effective Date, the Responsible Person acting on the Reorganized Debtor's behalf) is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of this Plan.

Section 14.06 <u>Exemption from Transfer Taxes</u>.    Pursuant to section 1146(c) of the Bankruptcy Code:  (a) the creation of any mortgage, deed of trust, Lien, pledge, or other security interest; (b) the making or assignment of any lease or sublease; (c) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including, without limitation, any restructuring, disposition, liquidation, or dissolution, deeds, bills of sale, transfers of tangible property or the transfers, sales, and assignments of the Debtor's owned and leased real property pursuant to this Plan or otherwise; or (d) any distributions to Holders of Claims pursuant to this Plan will not be subject to any document recording tax, stamp tax, conveyance fee, personal property tax, real estate transfer tax, intangibles or similar tax, mortgage tax, stamp act, mortgage recording tax, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental

28

officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

Section 14.07 <u>Good Faith</u>.  Confirmation of the Plan shall act as a finding by the Bankruptcy Court that the Debtor and each of its current and former officers, directors, employees, advisors, agents, attorneys and Professionals have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code.

Section 14.08 <u>Severability of Plan Provisions</u>.  If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, but subject to <u>Section 14.04</u> of this Plan, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

Section 14.09 <u>Successors and Assigns</u>.  This Plan shall be binding upon and inure to the benefit of the Debtor and its successors and assigns.  The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such entity.

Section 14.10 <u>Notice</u>.  All notices, requests and demands to or upon the Debtor, the Reorganized Debtor and the Responsible Person to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Carthage Specialty Paperboard, Inc.
c/o Don Schnackel
3 Burns Cove Rd.
Jamesville NY  13078

with a copy (which shall not constitute notice) to:

Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, New York 13202
Telephone:    (315) 218-8000
Facsimile:    (315) 218-8100
Attn:  Stephen A. Donato
        Grayson T. Walter

29

3278801.4

Section 14.11 <u>Governing Law</u>.   Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, the rights and obligations arising under this Plan and any agreements, documents and instruments executed in connection with this Plan shall be governed by, and construed and enforced in accordance with, the laws of New York, without giving effect to the principles of conflicts of law of such jurisdiction.

Section 14.12 <u>Tax Reporting and Compliance</u>.   The Debtor and the Responsible Person, on behalf of the Reorganized Debtor, shall be authorized to take any and all actions that may be necessary or appropriate to comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all payments and distributions hereunder shall be made subject to such withholding and reporting requirements.  Any amounts so withheld and paid to the appropriate governmental authority shall be treated as if they were distributed to the Holder on whose behalf such withholding was made.  Notwithstanding the foregoing, each Holder entitled to receive a distribution pursuant to this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of all tax obligations on account of such distribution.  The Reorganized Debtor shall have no obligation to make a distribution to any Holder until such Holder has made arrangements satisfactory to the Reorganized Debtor for payment of any such tax obligation.  The Reorganized Debtor may require as a condition to making a distribution pursuant to this Plan, that the Holder provide a completed Form W-8 or W-9 and/or other tax information deemed necessary in the sole discretion of the Reorganized Debtor.

Section 14.13 <u>Filing of Additional Documents</u>.  On or before substantial consummation of this Plan, the Debtor shall File such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

Section 14.14 <u>No Waiver or Estoppel</u>.  Each Claim Holder or Interest Holder shall be deemed to have waived any right to assert that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtor and/or their counsel, the Creditors' Committee and/or its counsel, or any other party, if such agreement was not disclosed in this Plan, the Disclosure Statement or other Filings.

Section 14.15 <u>Request for Court Hearing</u>.  The Debtor or the Responsible Person on behalf of the Reorganized Debtor shall have the right to request a hearing before the Bankruptcy Court on any and all matters raised in connection with or related to this Plan.

The Debtor hereby requests confirmation of the Plan pursuant to section 1129(a) or section 1129(b) of the Bankruptcy Code.

Dated:  May 22, 2019                    CARTHAGE SPECIALTY PAPERBOARD, INC.


                                        _/s/ Donald Schnackel_
                                        _____
                                        By:     Donald Schnackel
                                        Title:   President and Chief Executive Officer

3278801.4